In re Vern C. KNOPF, and Lorene M. Knopf, Shekinah Gold Mines, Inc., a corporation, Lovern Trust Company, Debtors.

SHEKINAH GOLD MINES, INC., a corporation, Lovern Trust Company, Vern C. Knopf, and Lorene M. Knopf, Plaintiffs,

v.

UNITED STATES of America, INTERNAL REVENUE SERVICE, Defendant.

Bankruptcy Nos. 91–20953–7, 91–20943–7 and 91–20948–7.

Adv. No. 95/00098.

United States Bankruptcy Court, D. Montana.

Dec. 29, 1995.

Thomas S. Winsor, Helena, Montana, for Debtors/Plaintiffs.

Sherry S. Matteucci, United States Attorney, Billings, Montana, Jeffrey D. Snow, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## ORDER

JOHN L. PETERSON, Chief Judge.

At Butte in said District this 29th day of December, 1995.

In this adversary proceeding, the Plaintiffs/Debtors [1] ("Knopfs") challenge the Proof of Claim filed by the Defendant United States of America, Internal Revenue Service ("IRS"). In the complaint, the Knopfs' "First Claim for Relief" seeks a determination that the IRS failed to credit Knopfs' tax liabilities for the full value of real property deeded to the IRS on December 8, 1988, at the time of Vern Knopf's sentencing on tax fraud. In the Second Claim for Relief, Knopfs assert the IRS agreed to accept payment in the form of stock of Shekinah Gold

---

1. Shekinah Gold Mines and Lovern Trust Company are alter ego nominees of the Debtors Vern C. and Lorene M. Knopf. As such, the responsi-

ble taxpayers in this proceeding as in the Chapter 7 bankruptcy case are the Knopfs. Thus, this decision affects only the tax liability of Knopfs.

Mines, Inc. That claim is now abandoned, as no evidence was submitted by the Plaintiffs in support of such allegations. Likewise, the Plaintiffs have failed to submit any testimony or evidence in support of the Third, Fourth, and Fifth Claims for Relief, and therefore, this Court deems such matters abandoned. Moreover, the Plaintiffs' post trial memorandum discusses solely the matters contained in the allegations of the First Claim for Relief, and thus the Court turns its attention to that sole issue.

This adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B), dealing with allowance or disallowance of claims against the estate and this Court has jurisdiction under 28 U.S.C. § 1334.

The controversy stems from a Plea Agreement (Exhibit 3), in a criminal case wherein Vern C. Knopf plead guilty to a misdemeanor charge of failing to file income tax returns in violation of 26 U.S.C. § 7023. The agreement was negotiated and executed on July 28, 1988, by Knopf and the United States Attorney for the District of Montana and filed of record in the United States District Court for Montana on August 5, 1988. The agreement is specifically conditioned on acceptance by the United States District Judge. (Exhibit 3, ¶ 10.) That part of the agreement pertinent to the issue before the Court concerns Knopfs' civil liabilities from taxes for the years 1978 to 1982, the non-filing years. Paragraph 11 of the agreement contains two parts, one of which deals with the alleged credit of land valued at $500,-000.00 as partial payment of the taxes due. In ¶ 11(a), Knopfs agreed to pay amounts shown due on their filed tax returns, plus penalties and interest. This subparagraph was described to the district court as the $500,000.00 paragraph, and was satisfied on the date of sentencing on December 8, 1988, by the Knopfs' cash payment of $490,000.00 by two cashier checks endorsed to the IRS. Paragraph 11(b), described as the million dollar provision, provides:

(b) Upon acceptance of this agreement by the Court, the defendants will as soon as reasonably possible deposit an additional $1,000,000.00 with the Internal Revenue Service in anticipation of the addition tax liabilities, penalties and interest to be eventually determined due and owing. The Internal Revenue Service will treat this payment as a deposit until a 90–day letter has been issued, proposing any additional agreed tax and penalties, or until the defendants have requested the Internal Revenue Service to designate all or part of such payment as an advance payment. In accordance with the rules and regulations of the Internal Revenue Service, this deposit shall:

Prevent the further accrual of interest, to the extent of the amount deposited, and when and to the extent applied as a payment, the payment shall bear interest as a tax refund to the extent later refunded.

By the date the agreement was executed, the IRS had not finally determined the amount of tax due. That event did not occur until shortly before the sentencing date, when, after a meeting of the parties on November 30, 1988, the IRS agent in charge of the file wrote Knopf's counsel acknowledging Knopf had agreed to the tax, penalties and interest after certain reductions. To finalize that agreement, the IRS agent prepared and sent to the Knopfs for signature two separate Forms 870 entitled "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Assessment." [2] One Form 870 listed amounts due as follows:

| YEAR | TAX | PENALTY |
|---|---|---|
| 1978 | $ 4,376.00 | $ 1,453.00(1) |
| 1979 | –0– | –0– |
| 1980 | 20,216.00 | 33,116.00 |

The other Form 870 set forth the following:

| | | |
|---|---|---|
| 1981 | $ 33,014.00 | $ 19,036.00 |
| 1982 | 600,199.00 | 469,909.93(1) |

Footnote (1) on each Form 870 states such amount "does not include section 6653(b)(2) [interest] amount to be computed by Ogden Service Center." Vern Knopf signed both

2. If a taxpayer accepts the IRS's position in full, with no concessions, the taxpayer signs a Form 870, waiving restrictions on assessment. 26 C.F.R. § 601.106(d)(2). Thus, the notice of deficiency ("90–day letter") issued under 26 U.S.C. § 7522(a), being the "ticket to tax court," is waived by the taxpayer.

Forms 870 on December 5, 1988, thereby waiving the 90–day letter requirement described in ¶ 11(b) above and agreeing to the amount of the deficiency.

Next came sentencing day. Exhibit 2, Transcript of Sentencing Proceeding in *USA v. Knopf,* Criminal Docket No. 87–9–H–CCL, shows the court opened the session by stating:

> This is the time set down from sentencing and for consideration by the Court of a Plea Agreement filed in the captioned matter. (Exhibit 2, P. 1.)

The court then continued:

> Now, the next thing that I am concerned about in this case, and more so than in the normal case, and that is whether or not the requisites of the Plea Agreement have been met by the parties ... where are we with respect to compliance with those promises and contractual agreement. (Exhibit 2, P. 3.)

Counsel for Vern Knopf, the Defendant in the criminal case, stated there has been compliance with paragraph 11–a, b and c, and explained Knopf's payment of the $490,000.00 cash to satisfy ¶ 11(a), and with regard to ¶ 11(b), that Knopf gave the government two things, namely, a deed to a parcel of property in Oregon valued at $500,000.00 and an assignment in a contract for sale of mining property valued at $770,090.29. (Exhibit 2, P. 4.) In examining Vern Knopf, counsel for the government noted the Knopfs were tendering today $1,760,960.29, being the amount of agreed taxes, penalties and interests as represented in the Forms 870.

The matter of the value of the Oregon property was subject of the testimony of Vern Knopf after the Court admonished the parties that "it is very, very important to the court that that Plea Agreement be carried out," because "I don't want anybody playing games with the court here." (Exhibit 2, P. 8.) Vern Knopf, as owner of the Oregon property, testified it had a value of between $500,000.00 to $800,000.00 and gave answers to the following pertinent questions, to-wit:

> Q. All Right. And you have tendered two checks, one in the amount of $430,000.00 one in the amount of $60,-000 today, is that correct?

> A. Yes.

> Q. And these are certified checks made out to you and to the Internal Revenue Service?

> A. Yes.

> Q. Have you endorsed these checks over to the government?

> A. Yes. I just did.

> Q. And they are now in the possession of the U.S. Attorney; is that correct?

> A. Yes.

> Q. You've also deeded over your property in Oregon; is that correct?

> A. Yes.

> Q. And you are expecting to receive credit against the overdue indebtedness to the government as a result of that conveyance; is that correct?

> A. Yes. That was the understanding.
>
> (Exhibit 2, PP. 12–13.)

On cross-examination by government counsel, the following colloquy occurred:

> Q. Mr. Knopf, then, today you are tendering $490,000 in cash which were the two certified checks; is that correct?

> A. Yes, sir.

> Q. And you are tendering a deed to the Oregon property; is that correct?

> A. Yes, sir.

> Q. And this is the same property that you listed in the presentence agreement as being worth approximately $700,000; is that correct?

> A. Well, yes. The only reason was because a realtor in Medford, Oregon, by the name of VanVleet, had it appraised when we were down there and said it was worth between 7 and $800,-000, and then I figure now—well, I didn't want to overcharge, so I put it down lower. I didn't want to, you know, make it too high.

> Q. And pending appraisal, you believe it to be worth at least $500,000; is that correct?

> A. Pardon me. I know its worth more than that, but I listed it exclusively with Coldwell Banker Agency and El-

don Cosgrove, it is in Brookings, and he's a very respectable agent there, and he—I did not set the price. I asked him what it would sell for and he said, "Vern, property here has doubled since you've been here and left," and they're building this great big prison there in Crescent City and the people are just walking (sic) up in there, and there's only so much property to buy. And he said that property—"I know I can sell it for $500,000." And I said well then, put that on there.

Q. That's why you're basing that—

A. That's why I listed it as his suggestion not what I wanted, because I didn't want any more than what could be fair; what could be available. (Exhibit 2, PP. 18–20.)

After conclusion of such unrefuted testimony and a statement by Vern Knopf's counsel and Vern Knopf, the court imposed sentencing in accordance with the Plea Agreement and approved the Plea Agreement. (Exhibit 2, PP. 38–39.)

The IRS credited the Knopfs with the $490,000.00 cash payment against the 1978 to 1982 taxes, but not the full $500,000.00 value of the Oregon property. Shortly after the sentencing on January 18, 1989, Vern Knopf's counsel wrote the Assistant U.S. Attorney seeking a receipt in the amount of $500,000.00 for the Oregon conveyance, noting, "I am extremely concerned that the original agreement that Vern and I have had is being ignored or forgotten. I believe that we had a firm agreement that we would receive a '$500,000.00 credit against my client's tax liability." (Exhibit 7.) In response, the Assistant U.S. Attorney wrote on January 17, 1989, that there was a misunderstanding, that both felt the Oregon property was worth about $500,000.00, but "I never agreed to credit you with that exact value for it." (Exhibit 8.) The government attorney acknowledged a realtor told him it was worth more than $500,000.00, and wanted to sell the property to a prospective buyer, but government counsel stated, "I have no way of hiring him as we can't budget his commission," so the IRS would sell through its usual channels

through the Oregon IRS debt collection unit. The present record shows the property was thus sold by the IRS sometime in July 1989, for $285,000.00, but the record is barren as to how and in what manner the property was exposed to the market and on what conditions. The government now states that credit against the Debtors' agreed tax liabilities for the pertinent tax periods was made in the sum of $490,000.00 and $285,000.00 sometime in July, 1989.

The IRS Proof of Claim filed in this bankruptcy case asserts a total tax liability of $1,367,803.03 based on the following:

| | PRINCIPLE | PENALTY | INTEREST |
|---|---|---|---|
| 12/31/80 – | $ 17,313.56 | $ 42.00 | $ 5,975.24 |
| 13/31/82 – | $ 28,814.59 | $624,818.96 | $690,838.68 |

By comparing the two Forms 870 and the Proof of Claim, and considering the IRS conducted a re-audit in 1990 of the 1980 return finding more tax due, the Court finds the payments of $490,000.00 and $285,000.00 were credited against the tax liabilities for the years 1978, 1980, and 1981, and in partial reduction of the principle for 1982. It cannot be determined from the record as to what credit was made against the interest or penalty components of the 1982 taxes. I note the tax penalty under the Proof of Claim rose from $469,909.93 on Form 870 to $624,818.96 in the Proof of Claim.

The Debtors argue one additional part of the Plea Agreement was violated by the IRS. Paragraph 11(e) provides for payment of the civil tax liabilities in various accepted ways and also states:

> Real estate may be similarly deposited by deed to the Internal Revenue Service with the understanding if not sold, it will be valued at fair market value as set by a neutral appraiser. Said value shall be treated as a deposit for purposes of this agreement.

The clause is not pertinent to the issue here because of what transpired at the sentencing hearing, as explained infra, and the fact that the property was in fact sold, so the operative provision for a neutral appraiser never became effective or necessary.

The IRS contends the government never accepted the $500,000.00 value for the Oregon property and if the Assistant U.S. Attor-

ney did so, such attorney's action would not bind the IRS, because such counsel had no authority to bind the government. On this latter issue, I hold such position is without merit.

■ The Attorney General of the United States has the responsibility to represent the United States in judicial proceedings. 28 U.S.C. § 519. The Attorney General's authority on such matters is "plenary." *Marshall v. Gibson's Products, Inc.*, 584 F.2d 668, 676 n. 11 (5th Cir.1978). In turn, the Attorney General may make "such provisions as [s]he considers appropriate" to authorize the performance of her functions by *"any other* officer or employee" of the Department of Justice. 28 U.S.C. § 510. (Emphasis added.) By the same token, 28 U.S.C. § 517 authorizes the Attorney General to send "the Solicitor General or any other officer of the Department of Justice—to attend to the interests of the United States in a suit pending in the courts of the United States," and 28 U.S.C. § 518 provides that "[w]hen the Attorney General considers it in the interests of the United States, [s]he may personally conduct and argue any case in a court of the United States in which the United States is interested, or [s]he may direct the Solicitor General or any officer of the Department of Justice to do so."

By statute, settlement authority in cases arising under the Internal Revenue Code that have been referred to the Department of Justice for prosecution or defense is conferred solely upon the Attorney General "or [her] delegate." 26 U.S.C. § 7122(a).[3] In turn, the Attorney General has, by regulation, delegated the full extent of her settlement authority to the Deputy Attorney General.[4] 28 C.F.R. § 0.161(b). The Assistant Attorney General in charge of the Tax Division can accept offers in compromise of claims on behalf of the United States in cases in which the difference between the gross amount of the original claim and the proposed settlement does not exceed $2,000,-000.00 or 15% of the original claim, whichever is greater; and offer compromises of all nonmonetary cases. 28 C.F.R. § 0.160(a)(1).

28 C.F.R. § 0.70 (Subpart N) delegates the prosecution in all courts other than tax court of matters arising under the internal revenue laws, including criminal proceedings, to the Assistant Attorney General, Tax Division and 28 C.F.R. § 0.168 further provides for redelegation of those duties and responsibilities to subordinate division officials and United States Attorneys of any authority under §§ 0.160(a) and (b), 0.162, 0.164, and 0.172(b).

In light of this express statutory and regulatory authority, it does not bode well for an IRS attorney to now challenge the authority of the Assistant U.S. Attorney to settle a tax prosecution case by a court accepted Plea Agreement.[5]

■ A "court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir.1988); *same, Jeff D. v. Andrus*, 888 F.2d 617, 622 (9th Cir.1989) (courts are not permitted to modify settlement terms or in any manner to rewrite agreements reached by parties). Upon finding that a settlement was reached, a court may only enforce the settlement to which the parties agreed. *See, Little Rock School District v. Pulaski County Special School District*, 921 F.2d 1371, 1389 (8th Cir.1990). The question of whether

---

3. Sec. 7122(a) reads:
   (a) **Authorization.** The Secretary may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense.

4. The Attorney General has delegated to the Associate Attorney General the authority to perform the function of the Deputy Attorney General under 28 C.F.R. § 0.161 for all cases and matters arising out of the Antitrust, Civil, Civil Rights, Environment, and Natural Resources and Tax Divisions. (Order of the Attorney General No. 1627–92, dated October 19, 1992).

5. Because Knopf's case was referred to Department of Justice for prosecution, regulations and procedures under 26 U.S.C. § 7122 governing compromises by IRS agents or personnel are not applicable. *See, Laurins v. C.I.R.*, 889 F.2d 910, 912 (9th Cir.1989), discussing offers of compromise by a taxpayer to the IRS, and 26 C.F.R. § 301.7122—1(d)(1), (d)(3).

a settlement agreement exists is a question of fact. *See, Callie v. Near,* 829 F.2d 888, 891 (9th Cir.1987).

▮ The Plea Agreement was an integral part of the government's prosecution of Vern Knopf for income tax fraud. The agreement contains express written terms which governed the Debtor's conduct. Part of that conduct required a payment under ¶ 11(b) of $1 million property interests owned by the Debtors. To satisfy the agreement, the Debtor, on the day of the sentencing, delivered to the government and the government accepted a deed to property valued at $500,-000.00. As a quid pro quo for such conveyance, which was accepted in open court, the government became bound to credit the Debtors' tax liability for that amount. That was the agreement and understanding.

Indeed, the approval of the Plea Agreement by the U.S. District Court was a judicial act. The Debtor as well as the government became bound by its terms, and by the actions of the Debtor made in compliance with the agreement. Both parties are now judicially estopped to contend otherwise. As stated in *United States v. Owens,* 54 F.3d 271, 274–275 (6th Cir.1995):

Judicial estoppel "forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." *Teledyne Industries, Inc. v. NLRB,* 911 F.2d 1214, 1217 (6th Cir.1990). The word "successfully" means that "in order to invoke judicial estoppel, a party must show that the opponent took a contrary position under oath in a prior proceeding and that the prior position was accepted by the court." *Id.* at 1218.

The doctrine of judicial estoppel is designed "to protect the integrity of the judicial process" and prevent parties "from playing 'fast and loose with the courts.'" *Edwards v. Aetna Life Insurance Co.,* 690 F.2d 595, 598–99 (6th Cir.1982). Judicial estoppel serves a different function from other forms of estoppel, such as equitable estoppel or collateral estoppel. *Id.* at 598. Consequently, judicial estoppel may apply in contexts when other forms of estoppel do not. For example, the Supreme Court

has expressed reluctance to apply equitable estoppel against the government. "When the government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." *Heckler v. Community Health Services,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). In addition, the government should not be unduly hindered from changing its position if that shift is the result of a change in public policy. This Circuit, however, has distinguished judicial estoppel from equitable estoppel and has held that judicial estoppel may apply against the government when equitable estoppel would not. *Reynolds v. Commissioner of Internal Revenue,* 861 F.2d 469, 474 (6th Cir.1988). Judicial estoppel will be invoked against the government when it conducts what "appears to be a knowing assault upon the integrity of the judicial system." *Id.* Nonetheless, as we suggested in Reynolds, we believe that the rule of judicial estoppel, even when invoked, should be construed narrowly against the government for the policy reasons stated in Heckler.

The government created its own dilemma in selling the property below the agreed value of $500,000.00 when it refused, ostensibly for budget reasons, to engage the broker to develop a timely sale at that amount. Both the U.S. District Court and the Debtor were placed in a position by the government that the real estate was tendered in satisfaction of the $1 million promise. The government, in taking the deed after extensive testimony as to the $500,000.00 value of the Oregon property, is now judicially estopped in this proceeding from taking a contrary, inconsistent position. As stated in *Donahue v. United States,* 107 B.R. 146, 151 (Bankr.S.D.Ohio 1989):

The court agrees with and adopts the line of cases which consistently hold that agreed resolutions embodied in judicial determinations are more than mere contracts involving only the parties. As Justice Cordozo observed, "We reject the argument ... that a decree entered upon consent is

to be treated as a contract and not as a judicial act." *United States v. Swift & Co.*, 286 U.S. 106, 115, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932).

With the Plea Agreement filed in court, and subsequent signing by the Debtor of the Forms 870 agreeing to the tax deficiencies, followed by surrender of money and property in accordance with the approved Plea Agreement, the government as well as the Debtor, became bound by the judicial act. To hold otherwise would seriously undermine the integrity of the entire sentencing proceeding conducted by the U.S. District Court.

I therefore conclude the Debtors should have Judgment against the IRS disallowing the Proof of Claim as filed for failure to credit the tax liability with the full $500,-000.00 value of the Oregon real property.

IT IS ORDERED Judgment shall be entered for the Plaintiffs, Vern C. and Lorene Knopf, disallowing the Proof of Claim of the United States Internal Revenue Service, with leave of the Defendant to file an amended Proof of Claim in conformity with this Order within fifteen (15) days of the date of Judgment.