[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 2, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-11817

_____

Tax Court No. 3037-01L

BILLY S. CREEL, SR.,

Petitioner-Appellee,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellant.

_____

Appeal from a Decision of the
United States Tax Court

_____

**(August 2, 2005)**

Before EDMONDSON, Chief Judge, and TJOFLAT and KRAVITCH, Circuit
Judges.

KRAVITCH, Circuit Judge:

Respondent-Appellant, the Commissioner of Internal Revenue ("the

Commissioner"), appeals the Tax Court's decision denying a proposed levy to collect federal income taxes for the years 1987-1991 allegedly owed by Petitioner-Appellee, Billy Creel, Sr. ("Creel").[1]

## I.  Background

### 1.  Prior Criminal Tax Case

Creel failed to file timely federal income tax returns for the years 1985-1991.  The Internal Revenue Service ("IRS") referred the matter to the Department of Justice ("DOJ") for prosecution, and the DOJ assigned the matter to the United States Attorney's Office for the Middle District of Alabama.  On April 8, 1993, Creel pleaded guilty to both counts of a two-count criminal information charging him with willfully failing to file federal income tax returns for 1987 and 1988, in violation of 26 U.S.C. § 7203.  As part of the plea agreement, Creel agreed to file returns for the years 1985-1991 and make full restitution of the amount of loss resulting from his failure to file returns for the years 1986-1991.[2]

Creel's returns for the years 1986-1991 showed unpaid income taxes totaling

---

[1] The Tax Court sustained the Commissioner's proposed collection with respect to Creel's tax liabilities for 1985.  Thus, the 1985 tax liabilities are not at issue in this appeal.

[2] The plea agreement itself is not in the record.  The Presentence Investigation Report (PSI) issued by the U.S. Probation Office states the terms of the plea agreement.

2

$83,830.[3]  The IRS assessed the taxes shown on the returns, plus interest.  The IRS

assessed penalties for failure to file timely returns for each year under 26 U.S.C. §

6651(a), and penalties for underpayment of estimated tax under 26 U.S.C. § 6654

for the years 1985-1989.[4]

On June 14, 1993, the district court sentenced Creel in the criminal case and

he was placed on probation for five years.  As a condition of probation, Creel was

ordered to make restitution to the IRS for the years 1986-1991 in the amount of

"$83,830 *plus any applicable penalties and interest*."[5] (emphasis added).  The

---

[3] The tax returns showed the following unpaid taxes:

| Year | Tax Unpaid |
| --- | --- |
| 1986 | $23,287.00 |
| 1987 | $9,514.96 |
| 1988 | $15,974.75 |
| 1989 | $15,148.34 |
| 1990 | $10,425.95 |
| 1991 | $9,479.16 |

Creel also filed a return for 1985 showing unpaid taxes of $18,772.16.

[4] The assessed penalties and interest were as follows:

| Year | § 6651(a) | § 6654 | Interest | Total |
| --- | --- | --- | --- | --- |
| 1985 | $4,223.74 | $1,396.73 | $29,197.90 | $34,818.37 |
| 1986 | $5,239.65 | $1,267.57 | $23,477.31 | $29,984.53 |
| 1987 | $2,140.87 | $578.13 | $7,607.78 | $10,326.78 |
| 1988 | $3,594.32 | $3,594.31 | $9,531.87 | $16,720.50 |
| 1989 | $3,408.37 | ----- | $6,183.66 | $9,592.03 |
| 1990 | $2,345.83 | ----- | $2,488.77 | $4,834.60 |
| 1991 | $2,132.81 | ----- | $981.71 | $3,114.52 |

[5] The amount of restitution was computed as follows:

| Year | Tax Amount |
| --- | --- |
| 1986 | $23,287 |

3

district court ordered the restitution pursuant to 18 U.S.C. § 3663(a)(3), which provides that a "court may...order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." To secure the restitution obligation, the U.S. Attorney recorded a judgment lien against Creel's property.

Beginning in May 1994, and continuing through June 1998, Creel made monthly restitution payments totaling $83,830. On June 9, 1998, after Creel made his last monthly restitution payment, the USAO informed the district court that Creel's restitution obligation had been paid or was otherwise settled. The U.S. Attorney filed a Satisfaction of Judgment that stated: "The assessment, fine, and/or restitution imposed by the Court...having been paid or otherwise settled, the Clerk...is hereby authorized and empowered to satisfy the Judgment as to the monetary imposition only." The U.S. Attorney also recorded a Cancellation and Release that stated that the previously-recorded judgment lien was "fully released, satisfied, discharged, and cancelled" because the debt was "paid in full."

---

1987   $9,514.96
1988   $15,974.75
1989   $15,148.34
1990   $10,425.95
1991   $9,479.16

Total   $83,830.00

The judgment stated that the restitution should be paid to the DOJ in monthly installments according to a schedule determined by the U.S. Probation Office.

4

## 2. *Administrative Proceeding*

The IRS applied the restitution payments totaling $83,830 to fully satisfy Creel's tax liability for 1986 and part of his tax liability for 1987. Claiming that Creel owed additional taxes, penalties, and interest for 1985 and 1987-1991, in June 1998, the IRS assigned the account to the Collection Division. The revenue officer and Creel's representative discussed whether Creel could enter into an offer in compromise or a deferred payment schedule. These discussions ended when the parties disagreed as to the amount Creel could afford to pay.

On February 2, 2000, the Commissioner sent Creel a notice of intent to levy showing unpaid amounts totaling $284,758.28 and a notice of a right to a collection-due-process ("CDP") hearing with respect to these unpaid amounts[6]:

| Year | Assessed Unpaid Tax Per Return | Assessed Late Filing Penalties and Statutory Interest as of July 24, 2000 | Total Assessed Amounts as of July 24, 2000 | Unassessed Late Payment Penalties and Statutory Interest | Total Due |
|------|------|------|------|------|------|
| 1985 | $18,772.16 | $34,818.37 | $53,601.53[7] | $31,803.67 | $85,405.20 |
| 1987 | $9, 514.96 | $10,326.78 | $18,063.01[8] | $19,189.06 | $37,252.07 |
| 1988 | $15,974.75 | $16,720.50 | $32,695.25 | $28,729.02 | $61,424.27 |

[6] Prior to a levy, the IRS must give the taxpayer notice of an opportunity for a CDP hearing before the IRS Appeals Office. 26 U.S.C. § 6330(a).

[7] Includes fees and collection costs totaling $11.

[8] Includes fees and collection costs totaling $11 and reflects the application of a $1,500 payment and a $278.73 payment.

| | | | | |
|---|---|---|---|---|
| 1989 | $15,148.34 | $9,592.03 | $24,751.37[9] | $22,270.20 | $47,021.57 |
| 1990 | $10,425.95 | $4,834.60 | $15,271.55[10] | $14,026.54 | $29,298.09 |
| 1991 | $9,479.16 | $3,114.52 | $12,593.68 | $11,763.40 | $24,357.08 |
| Total | | | | | $284,758.28 |

Creel requested a CDP hearing. Creel's counsel met with Judy Kelly, the Appeals Officer assigned to the case, to discuss the proposed levy. Creel's counsel argued that Creel's alleged civil tax liabilities for the years 1986-1991 had been satisfied by virtue of his payment of $83,830. Kelly disagreed, determining that the restitution order required that Creel pay "83,830 *plus any applicable penalties and interest.*" (emphasis added). Accordingly, Kelly sustained the Commissioner's proposal to collect the unpaid "applicable penalties and interest."

*3. Tax Court Proceeding*

Creel petitioned the United States Tax Court under 26 U.S.C. § 6330(d) for review. At the trial, Creel testified that it was his understanding that his payment of $83,830 satisfied all of his tax liabilities for the subject years. Besides Creel, the only other witness to testify was Kelly. The Commissioner reserved in its trial memorandum the right to call as a witness a representative of the DOJ and/or the USAO, but never did so.

---

[9] Includes fee and collection costs totaling $11.

[10] Includes fee and collection costs totaling $11.

6

Following the trial, the Tax Court entered an order, in which it did not sustain the proposed levy with respect to the 1987-1991 liabilities.[11] The Tax Court found that Creel's payment of $83,830 and the U.S. Attorney's issuance of a satisfaction of judgment and release of lien settled the alleged civil tax liabilities. The Tax Court found, *inter alia*, that Creel testified "credibly and without contradiction that he understood that his payment of the $83,830 would satisfy his civil tax obligation for $83,830 plus related penalties and interest." The court also relied on the "missing witness inference," inferring that the Commissioner's failure to call to the stand a representative of the U.S. Attorney's Office suggested that "any relevant testimony from such a witness would have been unfavorable" to the Commissioner. Finally, the Tax Court concluded that the U.S. Attorney had the authority to settle Creel's civil tax liabilities. The Commissioner now appeals the Tax Court's decision.

## II. Discussion

### 1. Standard of Review

We review the Tax Court's factual findings for clear error and its legal conclusions de novo. Atlanta Athletic Club v. Commissioner, 980 F.2d 1409,

---

[11] The Tax Court sustained the proposed levy for the 1985 tax year because that year was not included in the restitution order. Thus, as noted earlier, the 1985 tax liabilities are not at issue in this appeal. The court also held that the Appeals Office did not abuse its discretion in rejecting Creel's proposal to make minimal monthly payments of $250.

7

1411-12 (11th Cir. 1993). "A finding of fact is clearly erroneous if the record lacks substantial evidence to support it, so that our review of the entire evidence leaves us with the definite and firm conviction that a mistake has been committed." Atlanta Athletic Club, 980 F.2d at 1411-12 (citations and quotation marks omitted).

*2. Analysis*

The Commissioner concedes that Creel's criminal restitution obligation was satisfied, and thus, his criminal tax liabilities were discharged. The Commissioner contends, however, that the satisfaction of Creel's criminal restitution obligation has no bearing on the Commissioner's ability to pursue Creel for additional civil tax liabilities.

In the abstract, the Commissioner is correct. As a general rule, the government can recover criminal penalties from an individual in a criminal prosecution and can recover additional civil penalties in a civil proceeding. See generally United States v. Barnette, 10 F.3d 1553, 1558 (11th Cir. 1994); Hickman v. Commissioner of Internal Revenue, 183 F.3d 535, 537-38 (6th Cir. 1999). Moreover, an order to pay restitution under 18 U.S.C. § 3663 is a *criminal* penalty rather than a civil penalty. United States v. Johnson, 983 F.2d 216, 220 (11th Cir. 1993). Indeed, the restitution statute used in the instant case expressly

8

contemplates that a civil claim may be brought subsequent to a criminal conviction by providing for an offset for the amount of restitution paid in the criminal case against any damages recovered in the civil proceeding. 18 U.S.C. § 3663(e)(2).

The key problem with the Commissioner's position is that it fails to take into account the unique facts and the nuances of the instant case, most notably the language of the restitution judgment and the actions of the U.S. Attorney. As a condition of probation, the district court ordered Creel to pay restitution to the IRS. As stated in the PSI, the plea agreement mandated: "[a]s a condition of probation, the Court shall impose a condition requiring restitution in the amount of $83,830 to the Internal Revenue Service, *in addition to any interest and penalties which may be imposed by the Internal Revenue Service*." (emphasis added). In turn, the judgment in the criminal case set the amount of restitution at "$83,830 *plus any applicable penalties and interest*." (emphasis added). Thus, as the Tax Court found, the restitution amount specifically included the civil penalties that the Commissioner now seeks to recover.[12]

Creel made his monthly restitution payments totaling $83,830. As a

---

[12] The Commissioner also argues that the "any applicable penalties and interest" portion of the restitution judgment was too vague to be legally enforceable. The fact that penalties and interest might be undetermined at sentencing does not make them legally ineffective, so long as the amount is eventually agreed upon by the parties or adjudicated. See United States v. Stoehr, 196 F.2d 276, 284 (2d Cir. 1952). Here, there was no such need for agreement or adjudication because the penalties and interest were waived.

9

condition of probation, Creel still owed the "applicable penalties and interest."

Rather than pursue these additional civil penalties, the U.S. Attorney undertook two key actions. First, the U.S. Attorney issued a satisfaction of judgment which stated that "[t]he assessment, fine, and/or restitution imposed by the Court in the above styled case having *been paid or otherwise settled*..." (emphasis added). Second, the U.S. Attorney signed a cancellation and release of lien which stated that "[t]he debt secured...*having been paid in full, said lien is hereby fully released, satisfied, discharged, and cancelled*." (emphasis added).

Creel argues that because the government elected to include his civil tax liabilities as part of the restitution order, when the U.S. Attorney discharged the restitution obligation, Creel's civil tax liabilities were also extinguished. We agree. Creel testified in the Tax Court proceeding that he understood his payment of $83,830 constituted a full payment of his tax liabilities. He also testified to the effect that he understood the release issued by the U.S. Attorney discharged all that he owed. The Commissioner did not refute Creel's testimony or show that the release of lien and satisfaction of judgment should be viewed as anything other than a release of all liabilities contained in the restitution order. As the Tax Court noted:

> Although the record does not establish why the USAO treated the restitution order satisfied for the lesser amount, the record does establish that the sentencing court considered petitioner to be a man of

10

limited wealth. A reasonable inference is that the USAO believed that the receipt of petitioner's civil taxes (exclusive of penalties and interest) in the amount of $83,830 was the most that it could recover from petitioner and agreed with him following his sentencing that his timely payment of that amount would serve to settle his civil tax liability of $83,830 plus related penalties and interest.

Upon review of the record, we conclude that the Tax Court did not err in finding that Creel's civil tax liabilities were settled by virtue of the $83,830 payment and the actions of the U.S. Attorney. Thus, although not compelled to do so, the government discharged Creel's civil tax liabilities as part of the criminal case.

The Commissioner also argues that the Tax Court erred in applying certain legal principles. The Commissioner first contends that the Tax Court erred in concluding that the U.S. Attorney had the authority to compromise Creel's civil tax liabilities. Without such authority, the U.S. Attorney's actions would not bind the government, even if he intended to compromise Creel's civil tax liabilities. United States v. Beebe, 180 U.S. 343, 351 (1901); Klein v. Commissioner, 899 F.2d 1149, 1152 (11th Cir. 1990). "It is well settled that persons dealing with a governmental agent must take notice of the agent's authority and that any unauthorized acts taken by the agent do not bind the government. United States v. Killough, 848 F.2d 1523, 1526 (11th Cir. 1988).

Under 26 U.S.C. § 7122(a), "the Attorney General or his delegate may compromise" any "civil or criminal case arising under the internal revenue laws"

11

after "reference to the Department of Justice for prosecution or defense." In turn, the Attorney General's authority to compromise any "civil or criminal case arising under the internal revenue laws" has been delegated to the Assistant Attorney General, Tax Division. 28 C.F.R. §§ .70, 0.160. Moreover, some civil claim settlement authority has been re-delegated to U.S. Attorneys. Tax Div. Directive No. 105, § 7, 60 Fed. Reg. 31244 (1995), 28 C.F.R., Appendix to Subpart Y of Part O.[13] Although the Commissioner acknowledges that some civil settlement authority has been re-delegated to U.S. Attorneys, he argues that Creel fails to show that the formal requirements of a re-delegation were satisfied.

Under the unique facts of this case, we are not persuaded by the Commissioner's position. Importantly, the Commissioner concedes that the U.S.

---

[13] The full text of the regulation states:

Section 7. Subject to the conditions and limitations set forth in Section 8 hereof, United States Attorneys are authorized to:

(A) Reject offers in compromise of judgments in favor of the United States, regardless of amount;

(B) Accept offers in compromise of judgments in favor of the United States where the amount of the judgment does not exceed $300,000; and

(C) Terminate collection activity by his or her office as to judgments in favor of the United States which do not exceed $300,000 if the United States Attorney concludes that the judgment is uncollectible:

provided that such action has the concurrence in writing of the agency or agencies involved, and provided further that this authorization extends only to judgments which have been formally referred to the United States Attorney for collection.

Attorney had authority to settle Creel's criminal restitution obligation. And here the restitution obligation was drafted such that Creel's civil tax liabilities were inextricably intertwined with his criminal tax liabilities, which together formed a condition of his probation. Because the U.S. Attorney had the authority to settle the criminal side of the case, and the civil penalties were consolidated within the criminal case, the U.S. Attorney acted within the scope of his authority. Cf. In re Knopf v. United States, 190 B.R. 647, 651-52 (Bankr. D. Mont. 1995) (noting that "it does not bode well for an IRS attorney to...challenge the authority of the Assistant U.S. Attorney to settle a tax prosecution case by a court accepted Plea Agreement.").

Finally, the Commissioner argues that the Tax Court erred in applying the missing witness inference. The Tax Court inferred from the Commissioner's failure to present a witness from the DOJ or U.S. Attorney's Office that any relevant testimony from such a witness would have been unfavorable to the Commissioner. The Tax Court noted that the failure to call such a witness was peculiar given that the Commissioner listed a representative from the U.S. Attorney's Office or DOJ on its pre-trial witness list.

"It is well settled that the production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse." Raley, Inc. v. Kleppe, 867 F.2d 1326, 1329 (11th Cir. 1989); see also Mammoth

13

Oil Co. v. U.S., 275 U.S. 13, 52 (1927). The Commissioner argues that the use of the inference was improper because Creel had the burden to show that his civil tax liabilities were compromised, and the Commissioner's failure to call a witness cannot by itself satisfy Creel's burden.[14] That argument assumes that the Tax Court relied solely on the missing witness inference. A review of the record reveals that such an assumption is incorrect. The Tax Court simply relied on the missing witness inference along with the other evidence presented in the case. See Steiner v. Commissioner, 350 F.2d 217, 223 (7th Cir. 1965). Creel proffered other evidence to support the existence of a compromise: (1) Creel's uncontradicted testimony that he believed his payment of $83,830 fully satisfied all of the amounts he owed to the government; and (2) evidence showing that the U.S. Attorney issued a release of lien and satisfaction of judgment. Under these circumstances, we hold that there was nothing improper about the use of the missing witness inference.

For the foregoing reasons, we AFFIRM.

AFFIRMED.

---

[14] The Commissioner also argues that a witness was not called because he did not have adequate notice prior to the trial of Creel's theory of the case. Creel's pre-trial memorandum, however, specifically stated the relevant issue as whether "[he had] paid his tax liability in full" and argued that he paid as restitution the total amount of taxes owed in the amount of $83,830 and had received a satisfaction of judgment. Thus, there is no merit to this argument.