FILED
**United States Court of Appeals**
**Tenth Circuit**

**January 19, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOHN THOMAS MINEMYER,

     Petitioner - Appellant/Cross-
Appellee,

v.

COMMISSIONER OF INTERNAL
REVENUE,

     Respondent - Appellee/Cross-
Appellant.

Nos. 21-9006 & 21-9007
(CIR No. 22182-10)
(United States Tax Court)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

John Thomas Minemyer, proceeding pro se, appeals from a decision of the

United States Tax Court holding him liable for income tax deficiencies for tax years

2000 and 2001, and for a civil fraud penalty for tax year 2000.  The Commissioner of

Internal Revenue (IRS) cross-appeals the tax court's determination that

Mr. Minemyer was not liable for a civil fraud penalty for tax year 2001 because the

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

IRS failed to obtain written supervisory approval for the penalty as required by 26 U.S.C. § 6751(b)(1). In particular, the tax court held that § 6751(b)(1) requires such approval before any proposed civil fraud penalty is communicated to the taxpayer.

Exercising jurisdiction under 26 U.S.C. § 7482(a)(1), we affirm the tax court's decision holding Mr. Minemyer liable for the income tax deficiencies for 2000 and 2001, and for a civil fraud penalty for 2000. We reverse the tax court's holding that the IRS did not satisfy the approval requirement with respect to the 2001 civil fraud penalty, and hold that the IRS satisfies § 6751(b)(1) so long as written supervisory approval is obtained no later than the date the IRS issues the notice of deficiency formally asserting a penalty. Accordingly, we remand for the tax court to decide on the evidence whether Mr. Minemyer is liable for the civil fraud penalty for 2001.

## I. Background

In 2008 Mr. Minemyer was indicted on two counts of tax evasion for the years 2000 and 2001. He pled guilty to the 2000 count and in exchange the government dismissed the 2001 count. Two years later the IRS sent Mr. Minemyer a notice of deficiency asserting income tax deficiencies and civil fraud penalties for 2000 and 2001. Mr. Minemyer petitioned the tax court to dispute the asserted deficiencies and penalties. The tax court granted summary judgment in favor of the IRS on the deficiencies for both years and the fraud penalty for 2000. After a trial, the tax court held the IRS had not met its burden of production for the 2001 fraud penalty. Mr. Minemyer's appeal and the IRS's cross-appeal followed.

## A.  The Plea Agreement and Sentence

In connection with his guilty plea, Mr. Minemyer entered a plea agreement. Mr. Minemyer agreed "to pay restitution to the [IRS] in the amount of all taxes, interest, and penalties due and owing from the tax years 2000 and 2001."  R. vol. 2.2 at 93.  The plea agreement stated that "the Court shall enter a restitution order for the full amount of the IRS's loss," which the plea agreement calculated to be $200,918.22.  *Id.* at 99.  The concluding paragraph of the plea agreement contained an integration clause stating, *inter alia*, that "neither the [government] nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement."  *Id.* at 101.

The district court sentenced Mr. Minemyer to one year in prison and three years of supervised release.  It also ordered restitution in the amount of $200,918.22, which Mr. Minemyer paid at the time of his sentencing.

## B.  The Deficiency Notice and Fraud Penalties

In March 2010 a revenue agent visited Mr. Minemyer in prison and obtained his signature on a form proposing certain tax deficiencies and civil fraud penalties for 2000 and 2001.  Those proposed penalties and deficiencies had not been approved by the agent's supervisor.  Mr. Minemyer's signature evidenced his consent to the proposed amounts, but he later withdrew his consent.  The IRS therefore disregarded the form and in May 2010 sent Mr. Minemyer a letter, which the IRS calls a Letter 950 or a 30-day letter, proposing the same deficiencies and civil fraud penalties. That letter was approved by the revenue agent's immediate supervisor.

On August 19, 2010, the IRS sent Mr. Minemyer a deficiency notice determining a tax deficiency of $140,561 for 2000 and $56,944 for 2001.[1]  R. vol. 2.1 at 51.  It also determined civil penalties under 26 U.S.C. § 6663 in the amounts of $105,420.75 for 2000 and $42,708 for 2001.  *Id.*

## C. The Tax Court's Decision

Mr. Minemyer petitioned the tax court to dispute the deficiency notice.  He argued he did not owe the deficiencies because they were already part of the restitution he had paid.  He further argued he was not liable for the fraud penalties because a guilty plea does not prove fraud and because the plea agreement precluded any additional penalties.

The tax court rejected Mr. Minemyer's arguments in granting summary judgment to the government, holding that the plea agreement and conviction did not preclude the IRS from pursuing civil tax proceedings.  The tax court therefore upheld the tax deficiencies for 2000 and 2001.  The tax court further held that Mr. Minemyer's conviction for tax evasion on the 2000 count collaterally estopped him from challenging a civil fraud penalty for the same year.  Mr. Minemyer appeals from the tax court's summary judgment order.

The civil fraud penalty for 2001 went to trial, after which the tax court held that the IRS had not met its burden of production.  The tax court interpreted

---

[1] The Commissioner assures us that the figures differ between the restitution amount in the plea agreement and the deficiency notice "because of computational adjustments irrelevant to this appeal."  Principal and Resp. Br. at 14 n.2.  Mr. Minemyer does not dispute this characterization.

26 U.S.C. § 6751(b)(1) to require written supervisory approval of an initial determination of civil fraud penalties before that determination is formally communicated to the taxpayer. The court therefore held that because the March 2010 proposed deficiencies and penalties had been communicated to Mr. Minemyer without first being approved by a supervisor, the IRS had not complied with § 6751(b)(1). The IRS cross-appeals the tax court's interpretation of § 6751(b)(1).

## II. Discussion

### A. Standard of Review

"We review tax court decisions in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." *Keller Tank Servs. II, Inc. v. Comm'r*, 854 F.3d 1178, 1195 (10th Cir. 2017) (internal quotation marks omitted). "Thus, like our review of a district court's grant of summary judgment, we review the Tax Court's grant of summary judgment de novo." *Id.* We review the tax court's interpretation of the plea agreement for clear error. *See United States v. Rockwell Int'l Corp.*, 124 F.3d 1194, 1199 (10th Cir. 1997). Finally, we review de novo the tax court's conclusions of law, including its statutory interpretations. *Roth v. Comm'r*, 922 F.3d 1126, 1131 (10th Cir. 2019).

### B. Mr. Minemyer's Appeal

Mr. Minemyer challenges the tax court's summary judgment determination that he is liable for income tax deficiencies for tax years 2000 and 2001, and for a

5

civil fraud penalty for tax year 2000.[2]  He contends that his plea agreement and the

district court's restitution order precluded the IRS from pursuing civil tax

proceedings.  We reject his arguments.

As an initial matter, Mr. Minemyer appears to argue that his criminal

conviction and payment of restitution extinguishes the IRS's right to pursue income

tax deficiencies and fraud penalties in this case.  He is incorrect.  First, "any amounts

paid to the IRS as restitution must be deducted from any civil judgment IRS obtains

to collect the same tax deficiency."  *United States v. Tucker*, 217 F.3d 960, 962

(8th Cir. 2000).  Second, it is well settled that a conviction for tax evasion does not

preclude a later civil proceeding for the remedial purpose of determining, assessing,

and collecting tax deficiencies from the same taxpayer for the same years.  *See*

*Helvering v. Mitchell*, 303 U.S. 391, 399 (1938); *Creel v. Comm'r*, 419 F.3d 1135,

1140 (11th Cir. 2005); *United States v. Helmsley*, 941 F.2d 71, 102 (2d Cir. 1991).

Third, "the government does not surrender its right to seek civil fraud penalties by

undertaking a criminal tax prosecution."[3]  *Morse v. Comm'r*, 419 F.3d 829, 834

---

[2] We liberally construe Mr. Minemyer's pro se filings, but we do not assume the role of advocate.  *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

[3] Mr. Minemyer cites *Creel v. Commissioner* in arguing that his restitution payments extinguished his civil tax liabilities.  *Creel* recognized the "general rule [that] the government can recover criminal penalties from an individual in a criminal prosecution and can recover additional civil penalties in a civil proceeding." 419 F.3d at 1140.  But it held that under "the unique facts and the nuances" of the case, the restitution amount ordered by the district court specifically included the civil penalties.  *Id.*  By contrast, here the district court ordered restitution of $200,918 without incorporating or otherwise mentioning additional, undetermined civil penalties.

(8th Cir. 2005).  Thus, we reject Mr. Minemyer's contention that either his criminal conviction or payment of restitution precluded further civil tax proceedings.

Mr. Minemyer also contends that his plea agreement forecloses any civil liabilities exceeding his restitution payments, because his understanding of the plea agreement was that the district court would order restitution in the full amount of the government's losses.  "A court applies a two-step process in interpreting the terms of a plea bargain: first, the court examines the nature of the government's promise; second, the court investigates this promise based upon the defendant's reasonable understanding at the time the guilty plea was entered." *Rockwell*, 124 F.3d at 1199. There are two problems with Mr. Minemyer's contention.  First, the plea agreement contains an integration clause, which bars Mr. Minemyer from offering extrinsic evidence to prove his understanding.  *See id.* ("the second-step reasonableness inquiry is severely limited" by the presence of an integration clause in a plea agreement).  Second, the plea agreement contains no language prohibiting the IRS from assessing civil fraud penalties.  The only promises made by the government were that it would file no other federal criminal charges based on matters then known to it and that Mr. Minemyer would receive a one-level reduction in his offense level for purposes of calculating his sentence.

Mr. Minemyer also focuses on paragraph 3 of the plea agreement, which states:  "The defendant agrees to pay restitution to the [IRS] . . . in the amount of all taxes, interest, and penalties due and owing from the tax years 2000 and 2001."
R. vol. 2.2 at 93.  From this, he argues that the district court's subsequent restitution

order necessarily included "all" penalties owed and that therefore the IRS was precluded from pursuing additional civil fraud penalties. But the plea agreement simply recited what Mr. Minemyer agreed to; it did not obligate the district court to order any specific amount of restitution. *See, e.g.*, *Morse*, 419 F.3d at 834 ("[T]he district judge enjoys considerable discretion as to whether [to] order restitution, and if so, as to the amount." (brackets and internal quotation marks omitted)). In addition, plea agreements must be considered as a whole, *United States v. Jordan*, 853 F.3d 1334, 1341 (10th Cir. 2017), and other provisions of the plea agreement demonstrate that the restitution order did not include penalties. For example, paragraph 19.J of the plea agreement states that "the Court shall enter a restitution order for the full amount of the IRS's loss," R. vol. 2.2 at 99. Elsewhere the plea agreement states that the IRS's loss was $200,918—the amount comprising Mr. Minemyer's under-reported tax liability for 2000 and 2001—and the district court ordered restitution in that amount. In short, Mr. Minemyer's reliance upon paragraph 3 of the plea agreement is misplaced.

Mr. Minemyer's remaining arguments include: (1) the Tax Court was biased against him; (2) various Justice Department and IRS manuals mandate that plea agreements include a stipulation that the defendant must agree to civil liabilities exceeding restitution; and (3) the government committed fraud by not disclosing to him that his guilty plea could result in the assessment of civil fraud penalties. We reject each of these arguments and affirm the tax court's decision holding him liable

8

for income tax deficiencies for tax years 2000 and 2001, and for civil fraud penalties

for tax year 2000.[4]

### C.  The IRS's Cross-Appeal

Concerning the imposition of civil tax penalties, 26 U.S.C. § 6751(b)(1)

imposes an approval requirement:

> No penalty . . . shall be assessed unless the initial determination of such assessment is personally approved (in writing) by [an] immediate supervisor of the individual making such determination . . . .

As we explained in *Roth v. Commissioner*, 922 F.3d 1126 (10th Cir. 2019), an

"assessment" as used in this statute "is the formal recording and establishment of a

taxpayer's liability, fixing the amount owed by the taxpayer." *Id.* at 1131 (internal

quotation marks omitted).  "In essence, [an assessment] is the last of a number of

steps required before the IRS can collect" on a liability.  *Chai v. Comm'r*, 851 F.3d

190, 218 (2d Cir. 2017); *accord Roth*, 922 F.3d at 1131 (same).  "Before a liability

related to a deficiency or penalty may be assessed, the Commissioner must determine

whether one exists in the first place." *Roth*, 922 F.3d at 1131 (internal quotation

marks omitted).  Once the Commissioner makes that determination—often, as in this

case, in the form of proposed deficiencies and penalties sent to the taxpayer—a

---

[4] The IRS argues that with respect to the civil fraud penalties for the year 2000, Mr. Minemyer waived the argument that the IRS failed to comply with 26 U.S.C. § 6751(b)(1).  We need not address that argument in light of our resolution of the IRS's cross-appeal, in which we hold that with respect to the year 2001, the IRS did not fail to comply with the requirements of § 6751(b)(1).  The same reasoning would apply to the 2000 civil fraud penalties.

notice of deficiency may then be sent to the taxpayer. *Id.* If the taxpayer does not file a tax court petition challenging the notice within 90 days, "the deficiency . . . shall be assessed." 26 U.S.C § 6213(c). If the taxpayer does file a tax court petition, the IRS may not make an assessment until the tax court's decision is final. § 6213(a).

With this background, we turn to the issue presented in the IRS's cross-appeal. The United States Tax Court has interpreted § 6751(b)(1) to require supervisory approval *before* the IRS communicates an "initial determination of such assessment" to a taxpayer. *See Frost v. Comm'r*, 154 T.C. 23, 32 (2020). In this case, a revenue agent gave Mr. Minemyer a form proposing civil penalties. That form had not been approved by the agent's supervisor prior to its being handed to Mr. Minemyer. Because the form was never introduced into evidence, the tax court held that it could not assess whether the form was an "initial determination" within the meaning of § 6751(b)(1) and therefore the IRS had not carried its burden of showing it complied with the statute's requirements.

The IRS argues that the tax court imposed a requirement that appears nowhere in the text of the statute. That position is supported by two recent circuit court decisions, from the Ninth and Eleventh Circuits, which have examined the plain language of § 6751(b)(1) and concluded that it is not ambiguous and does not require supervisory approval before an initial determination of an assessment is communicated to the taxpayer. *Kroner v. Comm'r*, 48 F.4th 1272, 1276-81 (11th Cir. 2022); *Laidlaw's Harley Davidson Sales, Inc. v. Comm'r*, 29 F.4th 1066, 1070-74 (9th Cir. 2022). The courts in *Kroner* and *Laidlaw's* found nothing in the text of the

statute to support the timing requirement imposed by the tax court here. *See Kroner*, 48 F.4th at 1278 ("nothing in the text . . . requires a supervisor to approve penalties at any particular time"); *Laidlaw's*, 29 F.4th at 1072-73 ("[t]he statute does not make any reference to the communication of a proposed penalty to the taxpayer"). We agree with these assessments of § 6751(b)(1) and hold that its plain language does not require approval before proposed penalties are communicated to a taxpayer.[5]

That does not end our inquiry, however, for there remains the question whether § 6751(b)(1) imposes a timing requirement of any kind. The Second Circuit has observed that "[i]f supervisory approval is to be required at all, it must be the case that the approval is obtained when the supervisor has the discretion to give or withhold it." *Chai*, 851 F.3d at 220. The court reasoned that supervisory approval would be meaningless if the statute were construed to allow such approval *after* the supervisor lost the authority to prevent the penalty from being assessed. *See id.* at 220-21. The court further observed that the last moment that a supervisor still has

---

[5] In *Roth*, we held that a phrase in § 6751(b)(1), "the initial determination of such assessment," is ambiguous. 922 F.3d at 1132. That holding has no bearing on this case. We were required to interpret that phrase in *Roth* because the IRS had sent the taxpayer multiple notices with penalties of different amounts. *Id.* at 1130, 1133. We therefore had to determine which notice was the operative "initial determination." *See id.* at 1133. In other words, the case involved the *what* of the statute, not the *when*. The meaning of the phrase "initial determination of such assessment" is not implicated here, because although the IRS gave Mr. Minemyer three notices of civil fraud penalties, he concedes the penalties were identical in each instance. The question of which notice was the operative "initial determination" is therefore not material. To the extent *Roth* declares the entirety of § 6751(b)(1) ambiguous, we regard that declaration as dicta as to the specific issue presented here, which is *when* written supervisory approval must be obtained.

11

discretion to give or withhold approval is the IRS's issuance of the notice of deficiency, *id.* at 221, because after a notice of deficiency is issued the IRS loses the discretion not to assess penalties. *See* 26 U.S.C. § 6213(c) ("the deficiency . . . shall be assessed" if the deadline for seeking tax court review expires); § 6215(a) (if taxpayer petitions the tax court, then the tax court determines the deficiency and penalties, which "shall be assessed" once the tax court's decision becomes final). Accordingly, the Second Circuit held "that § 6751(b)(1) requires written approval of the initial penalty determination no later than the date the IRS issues the notice of deficiency . . . asserting such penalty." *Chai*, 851 F.3d at 221.

We are persuaded by the Second Circuit's reasoning and hold that with respect to civil penalties, the requirements of § 6751(b)(1) are met so long as written supervisory approval of an initial determination of an assessment is obtained on or before the date the IRS issues a notice of deficiency.[6] In this case, it is undisputed that the proposed penalties received written supervisory approval three months before the IRS issued the notice of deficiency to Mr. Minemyer. That is all that § 6751(b)(1) required. We therefore reverse the holding of the tax court denying a

---

[6] The Ninth Circuit in *Laidlaw's* agreed "that a supervisor cannot truly approve of a penalty determination without also possessing discretion to withhold approval," and that "a supervisor [therefore] cannot always satisfy § 6751(b)(1) by waiting to provide written approval until just before the moment of assessment." 29 F.4th at 1071. Only the Eleventh Circuit maintains that § 6751(b) is satisfied "so long as a supervisor approves a penalty before the assessment is made; there is no need to set an earlier deadline." *Kroner*, 48 F.4th at 1279.

civil fraud penalty for 2001 and remand for the tax court to decide on the evidence whether Mr. Minemyer is liable for the civil fraud penalty for 2001.

### III.  Conclusion

The tax court's decision is affirmed as to the income tax deficiencies for 2000 and 2001 and the civil fraud penalty for 2000.  The decision is reversed and remanded as to Mr. Minemyer's liability for the 2001 civil fraud penalty.  We deny Mr. Minemyer's motion to supplement the record.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge