**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 29, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

JOHN L. ROTH; DEANNE M. ROTH,

    Petitioners - Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

    Respondent - Appellee.

No. 18-9006

_____

**Appeal from the United States Tax Court**
**(CIR No. 005544-12)**
_____

James R. Walker, Lewis Roca Rothgerber Christie LLP, Denver, Colorado, for
Petitioners - Appellants.

Bethany B. Hauser, Tax Division Attorney (Richard E. Zuckerman, Principal Deputy
Assistant Attorney General, and Bruce R. Ellisen, Tax Division Attorney, with her on the
brief), Department of Justice, Washington, DC, for Respondent - Appellee.
_____

Before **LUCERO**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

    The Roths appeal from a decision of the Tax Court imposing a 40% penalty for

their gross misstatement of the value of a conservation easement they donated to a

land trust in Colorado. The Roths primarily contend that, before imposing the

penalty, the IRS failed to obtain written, supervisory approval for its "initial determination" of a penalty assessment as required by I.R.C. § 6751(b). The Roths also seek a deduction in 2007 for repayments they made on the proceeds from their sale of tax credits generated by their donation of a separate conservation easement in 2006. We disagree on both counts and therefore affirm the judgment of the Tax Court.

## I. BACKGROUND

In 2007, John and Deanne Roth donated a conservation easement ("the 2007 Easement") encumbering 40 acres of land they owned in Prowers County, Colorado to the Colorado Natural Land Trust. The 2007 Easement relinquished the Roths' rights to, among other things, mine gravel from the subject property.[1]

On their 2007 income tax return, the Roths valued the 2007 Easement at $970,000 and claimed a charitable-contribution deduction based on that amount. Because they could not make use of the entire claimed value as a deduction in 2007, the Roths claimed a carryover contribution on their 2008 tax return based on the unused portion of the $970,000.

---

[1] The Roths' case is one of the so-called "gravel-pit cases" in which Colorado taxpayers claimed large deductions based on the appraisal and donation of conservation easements prohibiting the mining of gravel on what had historically been farmland. The IRS later determined these easements to be effectively worthless (or worth drastically less than the taxpayers claimed) because the subject farmland was more valuable as farmland than it would be if mined for gravel. *Esgar Corp. v. Comm'r*, 744 F.3d 648, 658 (10th Cir. 2014).

In 2011, the IRS audited the Roths' tax returns for 2007, 2008, and 2009. In the course of this evaluation, the IRS hired an appraiser to provide an opinion of the fair market value of the 2007 Easement. The appraiser determined the easement to be worthless, although the parties later stipulated to a value of $40,000.

After the audit, an IRS Revenue Agent, Denise Soss ("RA Soss"), issued the Roths a set of Income Tax Discrepancy Adjustments. Based on the revaluation of the 2007 Easement, RA Soss determined the Roths were subject to a "gross valuation misstatement" penalty under I.R.C. § 6662(h), which allows for a 40% penalty on unpaid taxes when the claimed value of property exceeds its actual value by 200% or more. *See* I.R.C. §§ 6662(e)(1)(A), (h). RA Soss's "Group Manager" signed a "Civil Penalty Approval Form," approving the gross valuation misstatement penalty. RA Soss informed the Roths by letter of the proposed 40% penalty under § 6662(h).

The Roths filed a protest in response to the letter, seeking administrative review of RA Soss's proposed 40% penalty with the Internal Revenue Service Office of Appeals. The IRS granted review and assigned the Roths' case to Appeals Officer Mark Kawakami ("AO Kawakami"). AO Kawakami produced a memorandum concluding that "all issues including [RA Soss's proposed] penalties should be fully sustained for the government" with respect to the 2007 Easement. App. at 16.

Despite AO Kawakami's apparent agreement with RA Soss's proposal, however, his memo detailed a set of revised penalties owed by the Roths for 2007 and 2008. For each year, AO Kawakami's memo recites the Roths' tax obligation and the 40% penalty on that obligation proposed by RA Soss, but then it also states a

3

revised tax obligation and a revised penalty calculated at 20% of that obligation. An "Explanation of Items" attached to AO Kawakami's memo explains that the Roths are liable for an "accuracy-related" penalty under I.R.C. § 6662(a) amounting to 20% of their unpaid taxes. App. at 19. Nowhere in the memo does AO Kawakami explain the IRS's pivot from a 40% penalty under § 6662(h) to a 20% penalty under § 6662(a). In fact, the memo states RA Soss's proposed penalties were "[n]ot sustained in full by [the] Appeals [Office] due to a computational adjustment only." App. at 14. The IRS, for its part, explains the change as a clerical error. Whatever the reason, AO Kawakami's supervisor signed the memo, indicating her approval of the revised 20% penalty.

The IRS then sent the Roths a notice of deficiency setting forth the revised 20% penalty. The notice makes no mention of a 40% penalty under § 6662(h), and the pages attached to the notice clearly calculate a 20% penalty on the Roths' unpaid taxes for 2007 and 2008 under § 6662(a). The notice also informed the Roths of their right to file a petition with the United States Tax Court contesting the IRS's determinations, which the Roths did in 2012. In response to the Roths' petition, the IRS filed an answer re-asserting the Roths' liability for "a [40%] gross valuation misstatement penalty under I.R.C § 6662(a) & (h)[2] for each of the 2007 and 2008

---

[2] Strictly speaking, § 6662(h) modifies § 6662(a) by providing that, when a gross valuation misstatement results in underpayment of taxes, "subsection (a) shall be applied with respect to [unpaid taxes] by substituting '40 percent' for '20 percent.'" I.R.C. § 6662(h)(1). For that reason, 40% penalties might be said to arise under § 6662(a) *and* (h), while 20% penalties arise under only § 6662(a). For ease of

taxable years." App. at 84. Sara Barkley, Senior Counsel for the IRS ("SC Barkley"), and her supervisor Robert Varra, Associate Area Counsel ("AAC Varra"), both signed the IRS's answer.

Separately, in 2006, the Roths donated another conservation easement (the "2006 Easement") on a different forty-acre parcel of land to the Noah Land Conservation. In exchange for this donation, the Roths received $260,000 of tax credits that they later sold for $195,000. They reported the proceeds from this sale on their 2007 return. As a result of litigation in Colorado state courts, the Roths repaid portions of these proceeds in 2013 and 2014.

In 2016, the Roths and the IRS agreed to a set of stipulated facts with respect to the 2006 and 2007 Easements and submitted two questions to the Tax Court for decision: first, whether the IRS complied with § 6751(b)'s written-approval requirement before attempting to impose a gross valuation misstatement penalty; and second, whether I.R.C. § 1341 or a similar doctrine entitles the Roths to a deduction in 2007 for the repayments they made in 2013 and 2014.

The Tax Court entered judgment against the Roths on both counts. With respect to the 2007 Easement, the Tax Court reasoned that any of three instances in the Roths' case could be interpreted as fulfilling § 6751(b)'s "initial determination" written-approval requirement. First, RA Soss obtained the written approval of her supervisor for a 40% penalty at the conclusion of the IRS's audit. Second, AO

reference and simplicity's sake, however, this opinion refers to 40% penalties under § 6662(h) and 20% penalties under § 6662(a).

5

Kawakami obtained written approval from his supervisor supporting his conclusion that RA Soss's "proposed penalties [would be] fully sustained for the government," even though AO Kawakami's memo and the notice of deficiency actually calculated a 20% penalty. Finally, SC Barkley asserted in the IRS's answer that the Roths should be liable for a 40% penalty. On this final point, the Tax Court considered itself bound by *Graev v. Commissioner (Graev III)*, 149 T.C. 485 (Dec. 20, 2017), and *Chai v. Commissioner*, 851 F.3d 190 (2d Cir. 2017), which, together with I.R.C. § 6214(a), allow the IRS to assert additional penalties in an answer to a taxpayer's petition. With respect to the 2006 Easement, the Tax Court held that nothing in the I.R.C. entitles the Roths to a deduction in 2007 for repayments made in later years.

The Roths timely appealed.

## II. DISCUSSION

Section 6751(b) requires the IRS to obtain written, supervisory approval for its "initial determination" of a penalty assessment. The Roths do not dispute that the IRS obtained written, supervisory approval at every step in the agency's attempt to penalize them for the misstated value of the 2007 Easement. Nor do they dispute that both RA Soss and SC Barkley deemed a 40% penalty appropriate or even that a 40% penalty could apply under § 6662(h) to their gross misstatement of the 2007 Easement's value. Rather, the Roths contend that the notice of deficiency produced by the IRS after AO Kawakami's review is the agency's initial determination of the penalty under § 6751(b). Because that notice included only a 20% penalty under § 6662(a), the Roths continue, § 6751(b) now prevents the IRS from attempting to

6

impose anything other than the 20% penalty it "initially determined."[3] In short, the

Roths raise a narrow question of statutory construction: whether the statutory notice

of deficiency constitutes the IRS's § 6751(b) initial determination. To answer this

question, after stating the standard for our review, we consider the meaning of

§ 6751(b) generally before applying that meaning to the facts before us.

## A.  Standard of Review

We review Tax Court decisions "in the same manner and to the same extent as

decisions of the district courts in civil actions tried without a jury." 26 U.S.C.

§ 7482(a)(1). Our review of the Tax Court's interpretation of law is de novo. *Esgar*

*Corp. v. Comm'r*, 744 F.3d 648, 652 (10th Cir. 2014). Although the Tax Court's

decisions "may not be binding precedents . . . , uniform administration would be

promoted by conforming to them where possible," *Dobson v. Comm'r*, 320 U.S. 489,

502 (1943). Therefore, we consider rulings by the Tax Court on matters of law to be

persuasive authority, "especially if consistently followed," *Esgar*, 744 F.3d at 652.

## B.  Section 6751(b) Generally

When faced with a question of statutory construction, we begin with the

language of the statute itself. *Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242,

1244 (10th Cir. 1999). I.R.C § 6751(b)(1) provides:

> No penalty under this title shall be assessed unless the initial determination of
> such assessment is personally approved (in writing) by the immediate

---

[3] The parties do not dispute that the Roths have a reasonable-cause defense for a 20% penalty under § 6662(a), and the IRS concedes that the Roths may not be held liable for such a penalty. *See* I.R.C. § 6662(c).

7

supervisor of the individual making such determination or such higher level official as the Secretary may designate.[4]

Understanding § 6751(b)'s plain language requires a review of the process by which the IRS may assert a penalty and a definition of the key Internal Revenue Code terms "assessment," "penalty," "deficiency," and "determination."

Assessment is "the formal recording and establishment of a taxpayer's liability, fixing the amount owed by the taxpayer." *Keller Tank Servs. II, Inc. v. Comm'r*, 854 F.3d 1178, 1183–84 (10th Cir. 2017); *see also United States v. Galletti*, 541 U.S. 114, 122 ("[T]he term 'assessment' refers to little more than the calculation or recording of a tax liability."). Assessing a taxpayer's liability "triggers the IRS's ability to collect on the liability," whether the liability stems from a "penalty or [a] deficiency." *Keller Tank*, 854 F.3d at 1184; *see also Chai*, 851 F.3d at 218 ("[Assessment is,] in essence . . . the last of a number of steps required before the IRS can collect a [liability] . . . .").

The term "penalty," for purposes of § 6751, includes "any addition to tax or any additional amount." I.R.C. § 6751(c). Penalties are "imposed on taxpayers by the IRS to encourage compliance with tax laws." *Keller Tank*, 854 F.3d at 1183. A "deficiency," in turn, is "the amount by which the tax value imposed by the IRS exceeds the amount reported by the taxpayer on its return." *Id.*

---

[4] I.R.C. § 6751(b)(2) details certain exceptions to the written approval requirement, including penalties "automatically calculated through electronic means." The parties agree that these exceptions do not apply here.

8

Before a liability related to a deficiency or penalty may be assessed, the Commissioner must "determine" whether one exists in the first place. *See* I.R.C. § 6201(a) (giving the IRS Commissioner authority to "make the inquiries, *determinations*, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by [the Internal Revenue Code].") (emphasis added). Once the Commissioner determines a taxpayer's liability, the Commissioner may send a notice of deficiency (including any applicable penalty) to the taxpayer. *See* I.R.C. § 6212(a); *Graev III*, 149 T.C. at 499 (holding IRS carried "burden to show that section 6751(b) is satisfied with respect to the . . . penalties as asserted in the notice of deficiency"). After receiving such notice, the taxpayer has ninety days to file a petition with the Tax Court contesting the IRS's determination. I.R.C. § 6213(a). The Tax Court then has jurisdiction in a so-called "deficiency proceeding" to "redetermine the correct amount of the deficiency . . . and to determine whether any additional amount, or any addition to the tax should be assessed, if claim therefor is asserted by the Secretary at or before the hearing or a rehearing." I.R.C. § 6214(a). Once a deficiency proceeding begins, the IRS generally may not assess any liability "until the decision of the Tax Court has become final." I.R.C. § 6213(a).

Given these accepted definitions, § 6751(b)'s phrase "the initial determination of such assessment" poses an obstacle to plain-language interpretation. The Code does not require, or even contemplate, that "assessments" will be "determined." *See Chai*, 851 F.3d at 218–19 ("[O]ne can determine a deficiency, and whether to make

9

an assessment, but one cannot 'determine' an 'assessment.'" (quoting *Graev v. Commissioner* (*Graev II*), 147 T.C. 16, No. 30638-08, 2016 WL 6996650 (2016) at *31 (Gustafson, J., dissenting) (internal citations omitted))). Indeed, the IRS has seemingly little discretion to make any determination with respect to the assessment of a liability. *See* I.R.C. § 6213(c) (explaining that, if a taxpayer does not file a petition contesting a notice of deficiency, the liability "*shall be* assessed") (emphasis added); I.R.C. § 6215(a) (explaining that once a decision of the Tax Court has become final "the entire amount redetermined as the deficiency . . . *shall be* assessed") (emphasis added). And because assessment is the final step in a deficiency proceeding, occurring after the IRS has determined, and in some cases the Tax Court has redetermined, a taxpayer's liability, § 6751(b)'s plain language leaves open to debate when an initial determination takes place and whether that determination pertains to the IRS's early decision to seek a penalty or the later affirmance of that penalty and its resulting assessment.

Accordingly, we agree with the Second Circuit that the plain language of § 6751(b) is ambiguous, *see Chai*, 851 F.3d at 218, and we turn "to the legislative history and the underlying public policy of the statute" as indicators of the congressional intent lurking behind § 6751(b)'s words. *United States v. Manning*, 526 F.3d 611, 614 (10th Cir. 2008) (quotation marks omitted)

Congress added § 6751 to the I.R.C. with the Internal Revenue Service Restructuring and Reform Act of 1998. Pub. Law. No. 105–206, 112 Stat. 685. Section 6751 requires two things of the IRS: first, the agency must explain any

penalty to be assessed and that penalty's computation in a notice to the taxpayer, *see* I.R.C. § 6751(a); and second, the agency must secure written, supervisory approval for its initial determination of "such assessment," *see* I.R.C. § 6751(b). The Senate Finance Committee's report on § 6751 sheds light on the purpose of these additions to the I.R.C. The report expresses the Committee's concern that "[prior] law d[id] not require the IRS to show how penalties are computed," and in some cases, penalties could be "imposed without supervisory approval." S. Rep. No. 105-174, at 65 (1998). As reasons for the change, the report states "[t]he Committee believes that taxpayers are entitled to an explanation of the penalties imposed upon them. The Committee believes that penalties should only be imposed where appropriate and not as a bargaining chip." *Id.*

Evidently, Congress passed § 6751 to "clamp down on a perceived IRS practice." *Williams v. Comm'r*, No. 30487-15, 2018 WL 3301501, at *5 (T.C. July 3, 2018); *see also Chai*, 851 F.3d at 219 ("[Section 6751] was meant to prevent IRS agents from threatening unjustified penalties to encourage taxpayers to settle."). Requiring IRS employees to obtain supervisory approval for penalties under § 6751(b) (and to include computations of those penalties in a notice to the taxpayer under § 6751(a)) could conceivably "prevent the IRS from improperly using penalties . . . to coerce settlements." *Williams*, 2018 WL 3301501 at *5; *see also Graev III*, 149 T.C. at 500 (Lauber, J., concurring) ("[Congress] desired to prevent rogue IRS personnel from using penalties as leverage to extract concessions from taxpayers."). Reasoning from this purpose, the Tax Court and Second Circuit have interpreted

11

§ 6751(b) as requiring the IRS's "initial penalty determination" (rather than any determination with respect to the assessment itself) to receive written, supervisory approval. *See Chai*, 851 F.3d at 221; *see also Graev III*, 149 T.C. at 498. *But see Graev III*, 149 T.C. at 516 (Holmes, J., concurring in the result) (advocating a textualist interpretation of § 6751(b) as "a restriction on 'assessment'" and opining that, because assessment cannot occur until a Tax Court decision becomes final, "compliance with section 6751(b)(1) is not ripe for review in a deficiency setting because the penalties have not yet been 'assessed'").

Thus equipped with an understanding of § 6751(b)'s plain language and other indicators of Congress's intent, we apply § 6751(b) to the facts before us.

### C. Section 6751(b) Applied

The Roths can succeed on this appeal only if § 6751(b), read in light of its legislative history and underlying public policy, restricts the IRS's "initial determination" in this case to the 20% penalty specified in the notice of deficiency. This is because every other IRS employee to consider the Roths' case determined, and received written, supervisory approval of, a 40% penalty under § 6662(h). For the reasons discussed below, we conclude § 6751(b) does not so restrict the meaning of "initial determination," and the IRS may assess a 40% penalty despite its inclusion of a 20% penalty in the Roths' notice of deficiency.

First, nothing in the broader statutory scheme requires the IRS to include its "initial determination" in a notice of deficiency. The Roths suggest we should interpret § 6751(b) as a "harmonious whole" with other provisions of the I.R.C.,

12

including § 6212(a). *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *FTC v. Mandel Brothers, Inc.*, 359 U.S. 385, 389 (1959)). We agree. But reading § 6751(b) in context cuts against, not for, the Roths' position. For example, § 6212(a) provides that, if the Commissioner determines a deficiency, "he is authorized to send notice of such deficiency" to the taxpayer. I.R.C. § 6212(a). It does not provide that the notice *is* or *must contain* the IRS's determination, and in fact § 6212(a) appears to contemplate that the Commissioner's determination will *precede* the sending of a notice. *Id.* (providing "*[i]f* the [Commissioner] determines that there is a deficiency" *then* "he is authorized to send notice . . . .") (emphasis added). Likewise, I.R.C. § 6214(a) explicitly allows the Tax Court to redetermine a deficiency and any additional penalties stated in the notice "if claim therefor is asserted by the [Commissioner] at or before the hearing or a rehearing." Because a Tax Court proceeding necessarily occurs after the taxpayer has received a notice of deficiency, *see* I.R.C. § 6213(a), reading § 6751(b) in harmony with § 6214(a) suggests some initial determinations of penalty assessments will not be contained in a statutory notice of deficiency.

Second, the IRS's "initial determination" of a 40% penalty under § 6662(h) in the Roths' case could, consistent with the statute's language, be said to rest with either RA Soss or SC Barkley.[5] As the first IRS employee to find a 40% penalty

---

[5] The Tax Court concluded that AO Kawakami's statement "[RA Soss's] proposed penalties are fully sustained for the government" constituted an initial determination that a 40% penalty should apply for purposes of § 6751(b). *See* App. at 190, 195. As discussed above, a fuller reading of the memo produced by AO

under § 6662(h) applicable to the Roths' valuation misstatement, RA Soss represents a logical "initial determination"-maker. *See* Webster's New World College Dictionary 735 (4th ed. 2010) (defining "initial" as "having to do with, indicating, or occurring at the beginning"); Black's Law Dictionary 544 (10th ed. 2014) (offering "[t]he *first* determination made by the Social Security Administration of a person's eligibility for benefits" as an example of an "initial determination"). Although the Roths object that RA Soss's conclusions are merely "proposed," and therefore cannot be determinative, the Tax Court persuasively rejected a similar argument in *Graev III*, observing that "[a]ny 'initial determination' governed by section 6751(b), whether made by an examining agent or a chief counsel attorney, is mere advice until it receives the requisite supervisory approval." 149 T.C. at 496 (explaining "[t]he distinction petitioners seek to draw between 'advice' and an 'initial determination' lacks any firm basis in the statute").

And if RA Soss did not make the initial determination, SC Barkley's answer to the Roths' petition in Tax Court, signed by her immediate supervisor AAC Varra and asserting the Roths' liability for a 40% penalty under § 6662(h), satisfied § 6751(b). The Tax Court in *Graev III* specifically held that a § 6751(b) initial determination can take the form of advice from an IRS attorney. *Id*. And although the Roths argue IRS counsel have no authority to make initial determinations (based on various

_____

Kawakami and signed by his supervisor reveals, to the contrary, that AO Kawakami had determined to apply a 20% penalty under § 6662(a). But we need not decide whether such an inconsistent document can satisfy § 6751(b)'s requirements because we conclude § 6751(b) could have been satisfied by either RA Soss or SC Barkley.

14

internal IRS guidance documents), these arguments lack statutory support. Nothing in the I.R.C. delimits the employees who may make § 6751(b) initial determinations. Section 6751(b) itself restricts only which IRS officials may personally approve an initial determination, to the "immediate supervisor of the individual making such determination or such higher level official as the Secretary [through the Commissioner] may designate." I.R.C. § 6751(b). And the internal IRS guidance documents on which the Roths rely do not have the force of law. *See Rhone-Poulenc Surfactants & Specialties, L.P. v. Comm'r*, 114 T.C. 533, 543 n.16 (2000) ("The Internal Revenue Manual does not have the force of law.").

As discussed above, § 6214(a) expressly contemplates the IRS's ability to bring claims for "any addition" to a taxpayer's deficiency in a proceeding before the Tax Court. I.R.C. § 6214(a). After the IRS asserts such a claim, as SC Barkley did here, the Tax Court has "jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined" exceeds that in the "notice . . . mailed to the taxpayer," including "any additional amount, or any addition to the tax." *Id.* Numerous cases decided before and after the passage of § 6751 have upheld the Tax Court's "jurisdiction to consider a claim by the Commissioner for an increased deficiency and penalties asserted at or before the hearing or a rehearing." *Kramer v. Comm'r*, 104 T.C.M. (CCH) 38 (T.C. 2012); *see, e.g.*, *Powell v. Comm'r*, 581 F.3d 1267, 1271 (10th Cir. 2009); *Ferrill v. Comm'r*, 684 F.2d 261, 265 (3d Cir. 1982); *Henningsen v. Comm'r*, 243 F.2d 954, 959 (4th Cir. 1957). We agree with the IRS that adopting the Roths' proposed interpretation of § 6751(b) would effectively

repeal the Tax Court's well-settled jurisdiction to consider claims for new penalties asserted by the IRS in a deficiency proceeding.[6]

Furthermore, the Roths provide no support for a crucial premise of their argument—that the IRS may make only one "initial determination" in a given case. Once the IRS sent a notice of deficiency determining a 20% penalty, the Roths contend, no other penalty could ever be assessed consistent with § 6751(b). But even if we were to agree with the Roths, set aside RA Soss's 40% penalty as merely "proposed," and conclude that the notice of deficiency constituted an "initial determination" that a 20% penalty under § 6662(a) should apply, it is not clear why the IRS (in this case, SC Barkley) could not subsequently make another "initial determination" (with written, supervisory approval) that a different, 40% penalty should apply under § 6662(h). Each of these determinations would appear to be "initial" with respect to the actual penalty sought, whether under § 6662(a) or

---

[6] The Roths concede that "[n]owhere in the legislative history of [§ 6751] is there any hint that Congress intended to modify the jurisdictional award set forth in Section 6214(a)." Reply Br. at 12. Nevertheless, their proposed reading of § 6751(b) amounts to an argument that the Tax Court may not determine penalties asserted for the first time in an IRS answer, which the tax court plainly has jurisdiction to do under § 6214(a). To the extent the Roths effectively argue implied repeal, the text of § 6751(b) does not exhibit a manifest intent to repeal § 6214(a) or any other provision of the I.R.C., and no court has understood it to do so. *See Williams v. Comm'r*, No. 30487-15, 2018 WL 3301501, at *5 (T.C. July 3, 2018) (holding § 6751(b) did not impliedly repeal the Tax Court's power to impose penalties on its own motion and without supervisory approval because "[s]ection 6751(b)(1) is clearly not intended as a mechanism to restrain the Tax Court"); *see also In re Stephens*, 704 F.3d 1279, 1287 (10th Cir. 2013) ("Where a party contends 'that legislative action changed settled law,' that party 'has the burden of showing that the legislature intended such a change.'" (quoting *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 521 (1989)).

16

§ 6662(h). Notably, this reading of the statute harmonizes § 6751(b)'s initial determination requirement with § 6214(a)'s grant of jurisdiction to the Tax Court to consider new penalties asserted by IRS counsel in a deficiency proceeding.

Finally, adopting the Roths' reading of § 6751(b) would put us out of step with the Tax Court's jurisprudence in cases appealable to other circuits. *See Golsen v. Comm'r*, 54 T.C. 742, 757 (1970) (holding the Tax Court must "follow a Court of Appeals decision which is squarely [o]n point where appeal from [its] decision lies to that Court of Appeals and to that court alone"). While we are not bound by the Tax Court's decisions, we conform to them where possible in the interest of "uniform administration." *Dobson*, 320 U.S. at 502.

Conformity in this instance is not only possible but preferable because it harmonizes various provisions of the statute. Section 6751(b) does not limit the IRS's "initial determination" with respect to a penalty assessment to the penalty included in the statutory notice of deficiency.

### D. Deductions in Past Years

The Roths also claim they should be entitled to a deduction in 2007 for repayments made in 2013 and 2014 on proceeds from the sale of tax credits generated by their donation of the 2006 Easement. The Roths reported gains from this sale in 2007, but repaid portions in 2013 and 2014 following litigation in Colorado state courts.

Nothing entitles the Roths to a deduction in 2007 for repayments made years later.

As the Tax Court noted, I.R.C. § 1341 provides relief to taxpayers who include an amount received under a claim of right in their income but then repay that amount in a later tax year. If a taxpayer satisfies § 1341's requirements, then the taxpayer may take a deduction in the year repayment was made or reduce his taxable income for the year of repayment by the amount his taxes increased in the year he first claimed the income. *See* I.R.C. § 1341 (a)(1)–(3), (4), (5). Congress passed § 1341 to "alleviate some of the inequities" caused by application of the "claim-of-right" doctrine, which requires a taxpayer to report as income earnings received "under a claim of right . . . even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." *U.S. v. Skelly Oil*, 394 U.S. 678, 680–81 (quoting *N. Am. Oil Consol. v. Burnet*, 286 U.S. 417, 424 (1932)); *see also United States v. Lewis*, 340 U.S. 590, 590–591 (1951) (disallowing a 1944 tax refund for a taxpayer who received a bonus in 1944 and was required to pay it back in 1946).

The Roths complain the Tax Court used § 1341 as a "time bar" to disallow their 2007 deduction. Aplt. Br. at 39. This is incorrect. Section 1341, as the Tax Court explained, is a remedy for taxpayers—it eases the harsh application of the claim-of-right doctrine for qualifying taxpayers by either "reducing taxable income in the year of [repayment] . . . or by giving a credit in the year of [repayment]." *MidAmerican Energy Co. v. Comm'r*, 114 T.C. 570, 581 (2000), *aff'd*, 271 F.3d 740 (8th Cir. 2001). Nothing in § 1341 allows a taxpayer to reduce taxable income or take a tax credit in a year other than the year of repayment. And without § 1341, the Roths

18

fall squarely within the ambit of the claim-of-right doctrine. *See Skelly Oil*, 394 U.S. at 680–81 ("Should it later appear that the taxpayer was not entitled to keep the money . . . he would be entitled to a deduction in the year of repayment; the taxes due for the year of receipt would not be affected."). They point to no alternative remedy and no law, statutory or otherwise, that would allow them to take a deduction in 2007 for repayments made in 2013 and 2014.

### III.  CONCLUSION

For these reasons, we **AFFIRM** the decision of the Tax Court.