T.C. Memo. 2020-133

UNITED STATES TAX COURT

SUNIL S. PATEL AND LAURIE MCANALLY PATEL, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 24344-17, 11352-18,        Filed September 22, 2020.
25268-18.

David D. Aughtry and Patrick J. McCann, Jr., for petitioners.

Sebastian Voth, Sheri S. Wilder, Emerald G. Smith, and Kevin R. Oveisi,

for respondent.

---

[1]Cases of the following petitioners are consolidated herewith: Sunil S. Patel and Laurie M. McAnally-Patel, docket No. 11352-18; and Sunil S. Patel and Laurie M. McAnally-Patel, docket No. 25268-18.

[*2]                    MEMORANDUM OPINION

JONES, Judge:  By notices of deficiency dated August 25, 2017, March 15, 2018, and September 25, 2018, respondent determined deficiencies in the Federal income tax of petitioners, Sunil S. Patel and Laurie McAnally Patel, for the 2013, 2014, 2015, and 2016 taxable years[2] and accuracy-related penalties under section 6662 as follows:[3]

| Year | Deficiency | Penalty |
|------|-----------|---------|
| 2013 | $247,892  | $99,157 |
| 2014 | 484,420   | 96,884  |
| 2015 | 475,186   | 95,037  |
| 2016 | 529,949   | 105,990 |

Currently before the Court are cross-motions for partial summary judgment under Rule 121 as to whether respondent secured timely written supervisory approval for the penalties at issue as required by section 6751(b)(1).  As explained

_____

[2]By order dated October 17, 2019, we consolidated the cases for briefing and opinion.

[3]All section references are to the Internal Revenue Code in effect at all relevant times.  All Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*3] below we will grant in part and deny in part each motion for partial summary judgment.

## Background

There is no dispute as to the following facts, which are drawn from the parties' filings and the attached declarations and exhibits.

### I. Petitioners

Petitioners are married. Dr. Patel is an ophthalmologist who was the sole shareholder of Ophthalmology Specialists of Texas, PLLC (OST). He engaged in a purported microcaptive insurance arrangement for this business. In the process he formed several related entities through which petitioners deducted purported insurance premiums as business expenses during the years at issue.

### II. Administrative Proceedings

#### A. 2013 Tax Year

##### 1. Letter 5153 and Examination Report

In February 2016, respondent opened an examination into petitioners' 2013 tax return. Respondent assigned Revenue Agent David Snow (RA Snow) to conduct the examination.[4] On May 8, 2017, RA Snow sent petitioners a Letter

---

[4]Respondent examined returns for additional tax years during this examination, as discussed in further detail below.

**[*4]** 5153 and an accompanying examination report or Revenue Agent's Report (RAR). The RAR proposed changes in petitioners' income tax for the 2013 tax year, including an adjustment to the amount of income they reported for that year and the imposition of accuracy-related penalties under section 6662(a), (b)(2) and (6), and (i).

The Letter 5153 instructed petitioners to respond in one of four ways. If petitioners agreed with the changes proposed in the RAR, the first two options were to either submit payment for the full amount of tax owed or call RA Snow to discuss payment options. If petitioners did not agree with the changes proposed in the RAR, the third option was to agree to extend the period for assessment to allow for their case to be considered by the Internal Revenue Service (IRS) Office of Appeals (Appeals Office). The fourth and final option advised petitioners that if they failed to respond by the "response due date", their case would be processed on the basis of the proposed changes in the RAR and they would be sent a notice of deficiency. In response to the Letter 5153 petitioners did not to agree to extend the period of limitations on assessment.

2. Civil Penalty Approval Form

On May 25, 2017--17 days after he mailed Letter 5153 and the RAR to petitioners--RA Snow completed work on a civil penalty approval form (first civil

[*5] penalty approval form) seeking approval to impose accuracy-related penalties for the 2013, 2014, and 2015 tax years. In the box captioned "Reason(s) for Assertion of Penalty(s)" RA Snow wrote, in part:

> Section 6662(b)(6) imposes a penalty on any disallowance of claimed tax benefits by reason of a transaction lacking economic substance (within the meaning of section 7701(o)). * * * Section 6662(i) increases the accuracy-related penalty from 20% to 40% for any portion of an underpayment that is attributable to a 'nondisclosed noneconomic substance transaction' if the relevant facts affecting the tax treatment are not adequately disclosed in the return or a statement attached to the return.
>
> \*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*
>
> Here, the taxpayer did not file Forms 8275 or 8275-R, and did not make any other attempt to disclose the relevant facts affecting the items' tax treatment. Accordingly, a 40% penalty is appropriate for any portion of the underpayment attributable to the abusive captive insurance company transactions.

On May 25, 2017, RA Snow submitted the first civil penalty approval form to his then-immediate supervisor, Acting Group Manager Richard Keker (AGM Keker). AGM Keker signed it that day. His signature approved the assertion of penalties under section 6662(a), (b), (c), (d), and (i).[5]

---

[5]Though the civil penalty approval form used by respondent does not explicitly refer to sec. 6662(a), we construe the approval of a penalty under sec. 6662(b) on the form to constitute approval of a penalty under sec. 6662(a) by operation of the statute. See sec. 6662.

**[\*6]**        3.        Notice of Deficiency

On August 25, 2017, respondent issued a notice of deficiency to petitioners for the 2013 tax year. As respondent's primary position, the notice determined accuracy-related penalties under section 6662(b)(6) and (i).[6] As alternative positions, respondent determined accuracy-related penalties under section 6662(b)(1) and (2).

B.        2014 Tax Year

In March 2017, RA Snow expanded the examination to include petitioners' 2014 tax year. RA Snow's activity record shows that he entered the information for Dr. Patel's business, OST, into the Report Generation Software (RGS) on June 22, 2017.

        1.        First Civil Penalty Approval Form

As discussed above, the first civil penalty approval form was prepared by RA Snow and signed by his then-immediate supervisor, AGM Keker, on May 25, 2017. In addition to the 2013 tax year AGM Keker's signature approved the

---

[6]The Letter 5153, which was issued on May 8, 2017, asserted an accuracy-related penalty of $100,688 under sec. 6662 for the 2013 tax year. The corresponding notice of deficiency, which was issued on August 25, 2017, determined an accuracy-related penalty under sec. 6662 in the lesser amount of $99,156.80. The difference appears to be due to the fact that in Letter 5153 respondent calculated the total amount of the underpayment to be $251,719, but in the notice of deficiency he calculated a lesser underpayment of $247,892.

[*7] assertion of penalties for the 2014 and 2015 tax years under section 6662(a), (b), (c), (d), and (i).

### 2. Letter 5153 and RAR

On January 30, 2018, RA Snow sent petitioners a Letter 5153 and an accompanying RAR for the 2014 tax year. The Letter 5153 was, in almost all material respects, identical to the Letter 5153 for 2013 that RA Snow sent to petitioners on May 8, 2017; it gave petitioners the same four options for 2014 using the same structure and text. The RAR proposed changes to petitioners' return for the 2014 tax year, including an adjustment to the amount of income they reported for that year and the imposition of accuracy-related penalties under section 6662(a), (b)(2), and (6), and (i).

### 3. Second Civil Penalty Approval Form

At a time not disclosed by the record RA Snow completed work on a second civil penalty approval form, on which he sought approval to impose penalties for the 2014, 2015, and 2016 tax years (second civil penalty approval form).[7] RA Snow used the same text in the second civil penalty approval form that he used in the first civil penalty approval form to explain the assertion of penalties, including a discussion of section 6662(i) and an explanation of its application to petitioners.

---

[7]The 2015 and 2016 tax years are discussed below.

**[*8]**    On January 31, 2018, RA Snow's then-immediate supervisor, Group Manager Stephen Earley (GM Earley), signed the second civil penalty approval form.  GM Earley's signature approved the assertion of penalties under section 6662(a), (b), (c), (d), and (i) for the 2014 tax year (as well as 2015 and 2016, discussed below).

### 4.    Notice of Deficiency

On March 15, 2018, respondent issued to petitioners the notice of deficiency for the 2014 tax year.  The notice determined accuracy-related penalties under section 6662(a) and (b)(1), (2), and (6).  The notice did not determine a penalty under section 6662(i).

### 5.    First Amendment to Answer

Petitioners filed a petition on June 8, 2018, asking the Court to redetermine respondent's determination regarding the 2014 tax year, and respondent answered on August 3, 2018.  About eight months later, on March 8, 2019, we filed respondent's first amendment to answer in which he asserted an accuracy-related penalty of $193,768 under section 6662(i).

In his first amendment to answer, respondent represented that the initial determination to assert the penalty under section 6662(i) was made by Special Trial Attorney Sebastian Voth (STA Voth).  Area Counsel Sherri S. Wilder (AC

[*9] Wilder), STA Voth's immediate supervisor, electronically signed the first amendment to answer on February 25, 2019, thereby approving the assertion of the penalty under section 6662(i).

### 6. Summary of Respondent's Assertion of Penalties for the 2014 Tax Year

To summarize: For the 2014 tax year respondent asserted penalties under section 6662(a), (b)(2) and (6), and (i) in Letter 5153 and the accompanying RAR, which RA Snow mailed to petitioners on January 30, 2018. In the notice of deficiency dated March 15, 2018, respondent determined accuracy-related penalties under section 6662(a) and (b)(1), (2), and (6), but did not determine the penalty under subsection (i). Rather, respondent asserted the penalty under section 6662(i) in his first amendment to answer filed March 8, 2019.

### C. 2015 and 2016 Tax Years

We will address tax years 2015 and 2016 together because they have similar fact patterns and respondent covered both years in the same civil penalty approval form and communications to petitioners.

### 1. Second Civil Penalty Approval Form

As discussed above, the second civil penalty approval form was prepared by RA Snow and signed by his then-immediate supervisor, GM Earley, on January

[*10] 31, 2018. GM Earley's signature approved the assertion of penalties for the 2015 and 2016 tax years under section 6662(a), (b), (c), (d), and (i).[8]

### 2. The Letter 950 and RAR

On April 10, 2018, respondent sent petitioners a Letter 950, also referred to as a 30-day letter, and an accompanying RAR. The RAR proposed changes in petitioners' income tax for the 2015 and 2016 tax years, including an adjustment to the amount of income they claimed for each year and the imposition of accuracy-related penalties under section 6662(a), (b)(1), (2), and (6), and (i) for each year.

The Letter 950 instructed petitioners to respond in one of three ways by a "response due date" and provided a fourth option in the event that they did not respond. If petitioners agreed with the changes proposed in the RAR, the first two options were to either submit payment for the full amount of tax owed or to consult respondent's publications regarding payment options. If petitioners did not agree with the proposed changes, the third option instructed them to contact RA Snow to request a meeting or telephone conference with him. If the proffered

---

[8]The record shows that there was a third civil penalty approval form, which RA Snow prepared on May 28, 2018, and which was signed by his then-immediate supervisor, a group manager, on the same day. Because the form is not necessary to our analysis, it is not addressed.

[*11] meeting with RA Snow did not produce agreement, petitioners could request a conference with the Appeals Office. Letter 950 advised petitioners that if they failed to respond by the "response due date", their case would be processed on the basis of the proposed changes in the RAR. If petitioners chose this fourth and final option, they would be sent a notice of deficiency. Letter 950 bears the signature of Acting Group Manager Rafaela Mendez (AGM Mendez), who was serving as RA Snow's immediate supervisor when the letter was mailed.

### 3. Notice of Deficiency

On September 25, 2018, respondent issued the notice of deficiency for the 2015 and 2016 tax years. The notice determined accuracy-related penalties under section 6662(a) and (b)(1), (2), and (6). The notice did not determine penalties under section 6662(i).

### 4. Answer

Petitioners filed a petition on December 20, 2018, in which they asked the Court to redetermine respondent's determination regarding the 2015 and 2016 tax years. In respondent's answer, which was filed with the Court on March 19, 2019, he asserted accuracy-related penalties under section 6662(i) of $190,074 and $211,980 for the 2015 and 2016 tax years, respectively.

[*12] In his answer respondent represented that the initial determination to assert the penalties under section 6662(i) was made by STA Voth. STA Voth's immediate supervisor, AC Wilder, electronically signed the answer on March 19, 2019, thereby approving the assertion of the penalties under section 6662(i).

### 5. Summary of Respondent's Assertion of Penalties for the 2015 and 2016 Tax Years

To summarize: For tax years 2015 and 2016, respondent asserted penalties under section 6662(a), (b)(1), (2), and (6), and (i) in Letter 950 and the accompanying RAR, which RA Snow mailed to petitioners on April 10, 2018. Respondent did not determine the penalty under section 6662(i) in the September 25, 2018, notice of deficiency but did assert it in his March 19, 2019, answer.

We will discuss the significance of respondent's communications and the timing of these penalty approvals below.

## Discussion

### I. Law

#### A. Summary Judgment

Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials." Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to

**[*13]** any material fact and a decision may be rendered as a matter of law. Rule 121(b); <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994). Both parties have moved for partial summary judgment, and they agree that no genuine dispute of material fact exists regarding the question they have asked the Court to decide. After reviewing the parties' filings and the attached declarations and exhibits, we conclude that a decision may be rendered as a matter of law.

      B.     <u>Accuracy-Related Penalties and Requirements of Penalty Approval</u>

          1.     <u>Generally</u>

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty equal to 20% of the portion of an underpayment of tax required to be shown on a return that is attributable to "[n]egligence or disregard of rules or regulations" or "[a]ny substantial understatement of income tax", or both. An understatement of income tax is a "substantial understatement" if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Section 6662(a) and (b)(6) imposes an accuracy-related penalty equal to 20% of the portion of an underpayment that is attributable to "[a]ny disallowance of claimed tax benefits by reason of a transaction lacking economic substance (within the meaning of section 7701(o)) or failing to meet the requirements of any

[*14] similar rule of law." Section 6662(i) increases the accuracy-related penalty imposed under section 6662(a) to 40% of an underpayment which is attributable to one or more "nondisclosed noneconomic substance transactions".

## 2. Timeliness of Penalty Approval

Section 6751(b)(1) provides: "No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." Although section 6751(b)(1) does not explicitly prescribe the timing of the written supervisory approval, we have interpreted the provision to require such approval before the first formal communication to the taxpayer that demonstrates that an initial determination has been made. See, e.g., Belair Woods, LLC v. Commissioner, 154 T.C. ___, ___ (slip op. at 24-25) (Jan. 6, 2020); Clay v. Commissioner, 152 T.C. 223, 249 (2019); Carter v. Commissioner, T.C. Memo. 2020-21, at *27.

When asked to conduct inquiries into whether the Commissioner's employees gave sufficient consideration to the penalties they proposed and approved, we have determined that such lines of questioning are "immaterial and wholly irrelevant to ascertaining whether respondent complied with the written supervisory approval requirement of section 6751(b)(1)". Raifman v.

[*15] Commissioner, T.C. Memo. 2018-101, at *61.  In sum, the "written supervisory approval requirement of section 6751(b)(1) requires just that:  written supervisory approval."  Id.

### 3. Initial Determination

We recently held that the "initial determination" of a penalty, for purposes of section 6751(b)(1), must be a "formal act" that resembles a determination.  Belair Woods, LLC v. Commissioner, 154 T.C. at ___ (slip op. at 15).  We went on to conclude that in a deficiency context  "the document by which the Examination Division formally notifies the taxpayer, in writing, that it has completed its work and made an unequivocal decision to assert penalties" would embody the initial determination of those penalties.  Id. at ___ (slip op. at 24-25); see Clay v. Commissioner, 152 T.C. at 249.

In Carter v. Commissioner, at *6, a deduction for a charitable contribution was at issue, and the IRS sent the taxpayers a Letter 5153 and accompanying RAR.  The Commissioner argued that because the agent's communication to the taxpayers did not contain a 30-day letter and therefore did not communicate appeal rights, their case could be meaningfully distinguished from Clay.  Id. at *28-*29.  In Clay v. Commissioner, 152 T.C. at 249, the IRS sent the taxpayers the RAR and a 30-day letter that "propos[ed] adjustments including penalties and gave * * *

[*16] [the taxpayers] the right to protest those proposed adjustments." In Carter v. Commissioner, at *30, we rejected the IRS' argument, holding that the Letter 5153 and RAR sent to the taxpayers "clearly reflected * * * [the agent's] conclusion that * * * [the taxpayers] should be subject to gross valuation misstatement penalties for each of the years in issue." See also Belair Woods, LLC v. Commissioner, 154 T.C. at __ (slip op. at 24-25).

We concluded that the absence of 30-day letters did not indicate a lack of formality about the IRS agent's determination to assert penalties. Carter v. Commissioner, at *30. Rather, the RAR was sent with Letter 5153 because of the Carters' unwillingness to provide the Appeals Office sufficient time to consider their cases. Id. at *30-*31. We also rejected the argument that a communication cannot be an initial determination unless it provides appeal rights. Id. at *29. We noted that "any 'document by which the Examination Division formally notifies the taxpayer, in writing, that it has completed its work and made an unequivocal decision to assert penalties' would necessarily embody the initial determination of those penalties." Id. (quoting Belair Woods, LLC v. Commissioner, 154 T.C. at __ (slip op. at 24-25)).

We have previously acknowledged that the Commissioner can make more than one initial determination of a penalty under section 6662 (with written

[*17] supervisory approval, of course), Roth v. Commissioner, T.C. Memo. 2017-248, aff'd, 922 F.3d 1126 (10th Cir. 2019), and that an initial determination can be made by an IRS attorney, see Graev v. Commissioner, 149 T.C. 485, 494-498 (2017), supplementing and overruling in part 147 T.C. 460 (2016).

## II.   Analysis

We will determine whether respondent complied with the procedural requirements of section 6751(b)(1) by identifying the communication that formally notified petitioners, in writing, that respondent's Examination Division had completed its work and made an unequivocal decision to assert penalties. See Belair Woods, LLC v. Commissioner, 154 T.C. at __ (slip op. at 23-25). Then, we will ascertain whether the individual who made the initial determination to assert such penalties obtained the required written supervisory approval before petitioners were formally notified. See id. at __ (slip op. at 27).

### A.   2013 Tax Year

Respondent argues that the notice of deficiency dated August 25, 2017, embodied his formal communication to petitioners of his initial determination to assert penalties. Petitioners disagree. They point to Letter 5153, dated May 8, 2017, as respondent's formal communication of penalties. Respondent argues that Letter 5153 and the RAR do not embody his "initial determination" with respect to

[*18] the penalties proposed therein (section 6662(a), (b)(2) and (6), and (i)) because the letter did not grant petitioners the opportunity to go to the Appeals Office, which would have been included in a 30-day letter.

In Carter v. Commissioner, at *31, we found that the absence of a 30-day letter did not indicate a lack of formality about the IRS agent's determination to assert penalties. Rather, we observed that the fact that an RAR was sent with Letter 5153 rather than a 30-day letter appeared to have been attributable solely to the taxpayers' unwillingness to provide the Appeals Office sufficient time to consider their cases. Id. at *30-*31. We concluded that the granting of appeal rights is not a necessary element of an initial determination of penalties. Id.

In these cases, Letter 5153 and the accompanying RAR clearly reflected respondent's conclusion that petitioners should be subject to the accuracy-related penalties under section 6662(a), (b)(2) and (6), and (i). See Carter v. Commissioner, at *30.[9] It appears that RA Snow mailed Letter 5153 and the RAR to petitioners because they were unwilling to extend the period of limitations on assessment. We, therefore, agree with petitioners that Letter 5153 and the

---

[9]Respondent filed his response to petitioners' motion for partial summary judgment and his own motion for the same before we issued our opinion in Carter v. Commissioner, T.C. Memo. 2020-21, on February 3, 2020. As a result, respondent did not address Carter in his filings.

[*19] accompanying RAR embodied the "initial determination" of the penalties under section 6662(a), (b)(2) and (6), and (i) for the 2013 tax year. See Belair Woods, LLC v. Commissioner, 154 T.C. at ___ (slip op. at 24-25). Respondent does not dispute that RA Snow did not obtain written approval of those penalties before he sent Letter 5153 and the accompanying RAR on May 8, 2017.

The record establishes that the notice of deficiency embodied respondent's formal communication of his unequivocal decision to assert the penalty under section 6662(b)(1). See Belair Woods, LLC v. Commissioner, 154 T.C. at ___ (slip op. at 24-25). Because RA Snow secured supervisory approval of the section 6662(b)(1) penalty through AGM Keker's signing of the first civil penalty approval form before respondent issued the notice of deficiency, we hold that respondent complied with section 6751(b)(1) with respect to that penalty.

On the basis of the record, we conclude that respondent did not satisfy the requirements of section 6751(b)(1) with respect to the penalties asserted under section 6662(a), (b)(2) and (6), and (i), but did satisfy such requirements with respect to the penalty asserted under section 6662(b)(1) for the 2013 tax year.

B.  2014 Tax Year

Letter 5153 and the accompanying RAR, dated January 30, 2018, reflected respondent's conclusion that petitioners should be subject to accuracy-related

[*20] penalties under section 6662(a), (b)(2) and (6), and (i). We therefore hold that Letter 5153 and the accompanying RAR embodied the "initial determination" of penalties under section 6662(a), (b)(2) and (6), and (i) for the 2014 tax year. See Belair Woods, LLC v. Commissioner, 154 T.C. at __ (slip op. at 24-25). The penalty under section 6662(b)(1) was first determined in the notice of deficiency, dated March 15, 2018, and we hold that the notice embodied the "initial determination" of that penalty for tax year 2014.

We will first address whether the approval of penalties asserted under section 6662(a) and (b) was timely and will then turn to the timeliness of the approval for the penalty asserted under section 6662(i).

        1.     Timeliness of Approval of Penalties Asserted Under Section 6662(a) and (b) for 2014

Because AGM Keker signed the first civil penalty approval form on May 25, 2017, he approved the section 6662(a) and (b)(2) and (6) penalties in writing before respondent asserted them on January 30, 2018, in Letter 5153 and the RAR. Likewise, AGM Keker approved the section 6662(b)(1) penalty--and GM Earley approved that penalty on the second civil penalty approval form--before respondent asserted it on March 15, 2018, in the notice of deficiency.

**[\*21]** Petitioners argue that the first civil penalty approval form is meaningless with respect to the 2014 tax year because, according to them, respondent had not performed sufficient work in his review of petitioners' return to assert a penalty for that period. Petitioners read RA Snow's examination activity record to mean that he did not enter the information into the RGS for tax year 2014 until June 2017. They also argue that RA Snow's case records reflect that he did not begin analyzing some of the expenses petitioners reported for the 2014 tax year until October 2017.

Respondent counters by showing that he expanded the examination to the 2014 tax year in March 2017 and that RA Snow performed sufficient work on the 2014 tax year before preparing the first civil penalty approval form. Before preparing the form, RA Snow reviewed case information. On the basis of this review, he believed that it was appropriate to assert a penalty for the 2014 tax year based on all of the information that was available to him at the time, including his knowledge of petitioners' microcaptive insurance arrangement.

With respect to this part of the dispute, we repeat our observation that the "written supervisory approval requirement of section 6751(b)(1) requires just that: written supervisory approval." Raifman v. Commissioner, at \*61. The record includes the required written approval: the first civil penalty approval form. To

[*22] the extent that petitioners ask the Court to look behind the civil penalty approval form, "it would be imprudent for this Court to now begin examining the propriety of the Commissioner's administrative policy or procedure underlying his penalty determinations." See id. at *61 (citing Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 328-329 (1974)). Moreover, petitioners have not demonstrated "substantial evidence of unconstitutional conduct on respondent's part and [that] the integrity of our judicial process would be impugned if we were to let respondent benefit from such conduct." Greenberg's Express, Inc. v. Commissioner, 62 T.C. at 328.

To the contrary, the record establishes that respondent's agent prepared the civil penalty approval form after reviewing case information, including his knowledge of petitioners' microcaptive insurance arrangement. We conclude that respondent satisfied the requirements of section 6751(b)(1) with respect to the penalties asserted under section 6662(a) and (b)(1), (2), and (6) for the 2014 tax year.

**[\*23]**     2.     <u>Timeliness of Approval of Penalty Asserted Under Section 6662(i) for 2014</u>

Because AGM Keker signed the first civil penalty approval form on May 25, 2017, he approved the section 6662(i) penalty in writing before respondent asserted it on January 30, 2018, in Letter 5153 and the RAR. Although Letter 5153 and the accompanying RAR reflected respondent's conclusion that for 2014 petitioners should be subject to the penalty under section 6662(i), that penalty was not included in the notice of deficiency dated March 15, 2018. When STA Voth realized that the notice of deficiency neglected to include that penalty, he decided to assert the penalty in a first amendment to answer, which was filed (without objection) on March 8, 2019.[10]

---

[10] These facts are similar to the ones we faced in <u>Roth v. Commissioner</u>, T.C. Memo. 2017-248, <u>aff'd</u>, 922 F.3d 1126 (10th Cir. 2019). In that case a revenue agent received supervisory approval to assert a 20% penalty under sec. 6662(a) and a 40% penalty under sec. 6662(h), both of which were communicated to the taxpayers in a proposed report. <u>Id.</u> at \*4. The taxpayers submitted a protest to the Appeals Office. The Appeals Office issued a closing memorandum which fully sustained the proposed penalties but sent the taxpayers a notice of deficiency which included only the 20% penalty under sec. 6662(a) and omitted the 40% penalty under sec. 6662(h). <u>Id.</u> at \*5. In response to the taxpayers' petition, IRS counsel filed an answer reasserting the taxpayers' liability for the 40% penalty under sec. 6662(h). <u>Id.</u> We concluded that the initial determination of the 40% penalty could be said to rest with the revenue agent, the Appeals officer, or IRS counsel because in all three instances the individual proposing the penalties received personal approval, in writing, from his or her immediate supervisor. Accordingly, sec. 6751(b) was satisfied in each instance. <u>Id.</u> at \*9-\*10.

[*24] STA Voth's immediate supervisor, AC Wilder, signed--and thereby approved--the pleading on February 25, 2019, before STA Voth lodged it with the Court when he filed the motion for leave to file first amendment to answer, but AC Wilder's written approval was not necessary for compliance with section 6751(b)(1).  Rather, respondent previously satisfied the requirements of section 6751(b)(1) with respect to the penalty asserted under section 6662(i) for the 2014 tax year when AGM Keker signed RA Snow's civil penalty approval form.

  C. <u>2015 and 2016 Tax Years</u>

The record establishes that Letter 950 and the accompanying RAR, each dated April 10, 2018, were formal written communications to petitioners.  These communications notified petitioners that the Examination Division had completed its work and made an unequivocal decision to assert penalties under section 6662(a), (b)(1), (2), and (6), and (i) for each year.  Accordingly, we hold that Letter 950 and the accompanying RAR embodied the "initial determination" for the 2015 and 2016 tax years.  <u>See</u> <u>Belair Woods, LLC v. Commissioner</u>, 154 T.C. at __ (slip op. at 24-25). We will first address the approval of penalties asserted under section 6662(a) and (b) and will then turn to section 6662(i).

**[*25]**     1.     <u>Timeliness of Approval of Penalties Asserted Under Section 6662(a) and (b) for 2015 and 2016</u>

The record establishes two acts by which respondent arguably satisfied the requirements of section 6751(b)(1).  GM Earley signed the second civil penalty approval form on January 31, 2018--approving RA Snow's initial determination of penalties under section 6662(a) and (b)--before Letter 950 and the RAR were issued on April 10, 2018.  If GM Earley had not made such an approval, then AGM Mendez' signature on Letter 950 would have constituted a valid approval. <u>See</u> <u>Palmolive Bldg. Inv'rs, LLC v. Commissioner</u>, 152 T.C. 75, 85 (2019); <u>Flume v. Commissioner</u>, T.C. Memo. 2020-80, at *34.

Petitioners argue that the second civil penalty approval form is deficient with respect to the 2015 and 2016 tax years because it repeats the text in the "Reason(s) for Assertion of Penalty(s)" portion of the first civil penalty approval form, which they interpret to relate solely to the 2013 tax year.  In addition, they attack AGM Mendez' signature on Letter 950 as insufficient to satisfy the requirement under section 6751(b)(1) that an initial determination must be approved in writing by the immediate supervisor of the individual making the determination.  According to petitioners, AGM Mendez' signature was a nominal

[*26] act that did not reflect meaningful review, noting that the letter itself does not mention the penalty or the approval.

In arguing that the text on the second civil penalty approval form is inapplicable for the 2015 and 2016 tax years and that AGM Mendez' signature on Letter 950 is insufficient, petitioners again ask the Court to look behind the documents. See Belair Woods, LLC v. Commissioner, 154 T.C. at ___ (slip op. at 26). But with respect to each of these contentions we "'decline to read into section 6751(b)(1) the subtextual requirement' that respondent demonstrate the depth or comprehensiveness of the supervisor's review." Id. at ___ (slip op. at 27) (quoting Raifman v. Commissioner, at *61). On that basis we hold that respondent satisfied the requirements of section 6751(b)(1) with respect to the penalties asserted under section 6662(a) and (b)(1), (2), and (6) for the 2015 and 2016 tax years.

### 2. Timeliness of Approval of Penalty Asserted Under Section 6662(i) for 2015 and 2016

The section 6662(i) penalties were included by RA Snow in his second civil penalty approval form, which was signed by GM Earley. The section 6662(i) penalties were not thereafter included in the notice of deficiency dated September 25, 2018. When STA Voth realized that the notice of deficiency neglected to

[*27] include the penalties, he decided to assert them in the answer, which was filed on March 19, 2019. STA Voth's immediate supervisor, AC Wilder, signed the pleading on March 19, 2019, before STA Voth filed it later that same day. But AC Wilder's approval was not necessary under section 6751(b)(1), because the "initial determination" of the penalties--made by RA Snow--had already been timely approved by his immediate supervisor, GM Earley. Thus, the record establishes that respondent satisfied the requirements of section 6751(b)(1) with respect to the penalties under section 6662(i) for the 2015 and 2016 tax years.

III.    Conclusion

We hold that, with respect to the penalties asserted under section 6662 for the 2013 tax year, respondent did not satisfy the requirements of section 6751(b)(1) with respect to the penalties asserted under section 6662(a), (b)(2) and (6), and (i) but did satisfy such requirements with respect to the penalty asserted under section 6662(b)(1). We further hold that respondent satisfied all of the requirements of section 6751(b)(1) regarding the penalties asserted under section 6662(a), (b)(1), (2), and (6), and (i) with respect to the 2014, 2015, and 2016 tax years.

**[\*28]** We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.